[No. A120225. First Dist., Div. Five. Nov. 26, 2008.]

JILL KAREN SCHAFFER, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

**COUNSEL**

Scott Law Firm, John Houston Scott, Lizabeth N. de Vries; Law Offices of Randolph E. Daar and Randolph E. Daar for Plaintiff and Appellant.

Dennis J. Herrera, City Attorney, Joanne Hoeper, Chief Trial Deputy, and Warren Metlitzky, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**NEEDHAM, J.**—Jill Karen Schaffer appeals from a judgment entered after the trial court granted respondents' anti-SLAPP (strategic lawsuit against public participation) motion to strike her complaint. (Code Civ. Proc., § 425.16 (section 425.16).) She contends the court erred in concluding that respondents' statements, made in the course and scope of their duties as police officers, are not protected by the anti-SLAPP statute. She further contends the court should have granted her request for leave to amend the complaint to state a claim under 42 United States Code section 1983. We will affirm the judgment.

## I. *FACTS AND PROCEDURAL HISTORY*

On August 6, 2005, Schaffer was involved in an incident with Chris Daniels, a butler for the "Getty family."[1] A witness, Janelle Caywood, saw Daniels driving a car closely following Schaffer, who was on foot. Daniels appeared angry and called Schaffer "a miserable fucking cunt" and a "dirty fucking whore." At some point the police arrived, but Schaffer had apparently left the scene. Daniels told police that Schaffer had poured hot coffee on him. Caywood also gave a statement to police, as did Schaffer when she returned to the scene. No one was arrested.

On August 16, 2005, the San Francisco District Attorney determined there was insufficient evidence to prosecute and closed the case.

---

[1] Our summary of the facts is based on the allegations of Schaffer's complaint.

Months later, John Fewer, an inspector with the San Francisco Police Department and, like Daniels, an employee of the "Getty family," allegedly prepared a memorandum to Assistant District Attorney Williams, attacking witness Caywood's credibility and suggesting there was collusion between Caywood and Schaffer. The memorandum allegedly also emphasized Daniels's position as the Gettys' butler and the Gettys' concern that Schaffer be prosecuted. Purportedly as a result of Fewer's memorandum, Schaffer and Caywood were reinterviewed, but no collusion was found.

On April 28, 2006, Assistant District Attorney Reve Bautista nonetheless filed misdemeanor assault charges against Schaffer (Pen. Code, § 242), based on a complaint that incorporated an affidavit sworn by San Francisco Police Sergeant John Haggett. According to Schaffer, the charge was based on the same facts Williams had previously found insufficient for prosecution. Bautista, however, had a close personal relationship with Haggett, who was a friend of Fewer, who worked with Daniels for the Getty family.

Around June 23, 2006, Schaffer surrendered to authorities, spent three hours in jail, and posted bail. A few days later, Haggett executed a second affidavit, this time asserting Schaffer had violated Penal Code section 243, subdivision (a).

In August 2006, Schaffer's defense counsel requested discovery from the district attorney. In response, the district attorney's office represented the case would be dismissed, which it was the following October. The district attorney's office allegedly issued a press release stating the case should not have been filed "and the deputy [district attorney] [was] disciplined."

Schaffer filed a lawsuit in July 2007 against Haggett, Fewer, and the City and County of San Francisco. The complaint alleged four causes of action: (1) a violation of Civil Code section 52.1, subdivision (b), on the ground that defendants interfered with Schaffer's civil rights, by causing her to be arrested and prosecuted with the intent of intimidating or coercing her from bringing a claim or lawsuit against Daniels and the Getty family; (2) intentional infliction of emotional distress; (3) malicious prosecution (against Fewer only); and (4) negligence. The complaint alleged that, at all relevant times, Haggett was acting within the course and scope of his employment with the San Francisco Police Department, but Fewer was acting as an agent or employee of the Getty family.

The city and Haggett demurred to the first, second, and fourth causes of action directed against them, claiming among other things that they were

absolutely immune from liability pursuant to Government Code sections 821.6 and 815.2. Fewer demurred to the complaint in its entirety, relying largely on the litigation privilege set forth in Civil Code section 47, subdivision (b) and asserting further that the malicious prosecution claim failed to state a cause of action. All defendants joined in a motion to strike the complaint under the anti-SLAPP provisions of section 425.16. In support of the motion to strike, Fewer submitted a declaration asserting that he (like Haggett) had acted within the course and scope of his employment as a police officer.

Schaffer opposed the demurrers and sought leave to amend her complaint to add a claim under 42 United States Code section 1983, contending that Fewer had conspired with Haggett and others to deprive her of her constitutional rights. Schaffer also opposed the motion to strike.

The demurrers and motion to strike were heard on October 29, 2007. On November 26, 2007, the court granted the motion to strike, dismissed Schaffer's complaint with prejudice, and awarded defendants $15,000 in attorney fees. The court ruled that the gravamen of the complaint—Fewer's memorandum to the district attorney and the charging affidavits executed by Haggett—were writings or statements made in connection with an official proceeding and thus within the scope of the anti-SLAPP statute. (See § 425.16, subd. (e)(2).) The court further ruled that Schaffer failed to demonstrate with admissible evidence that she had a reasonable probability of success on the merits, and that respondents were immune from liability. Schaffer's request for leave to amend her complaint was denied. By separate order, the court ruled that the demurrers were moot in light of the grant of the motion to strike.

This appeal followed.

## II. DISCUSSION

Schaffer contends that Fewer's memorandum and Haggett's declarations supporting criminal charges against Schaffer are not protected by the anti-SLAPP statute. She further contends the court erred in denying her leave to amend her complaint. We first briefly overview the anti-SLAPP statute and then address the parties' contentions.

### A. Section 425.16

Section 425.16 authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public

issue.[2] It establishes a procedure by which the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) The purpose is to curtail the chilling effect meritless lawsuits may have on the exercise of free speech and petition rights, and the statute is to be interpreted broadly to accomplish that goal. (§ 425.16, subd. (a).)

In its motion, the defendant must make a prima facie showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity, as specified in the statute. (§ 425.16, subds. (b), (e).) The burden then shifts to the plaintiff to establish a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) If the plaintiff fails to do so, the motion to strike is granted and the prevailing defendant is entitled to recover his or her attorney fees and costs. (§ 425.16, subd. (c).) We review an order granting or denying a motion to strike under section 425.16 de novo. (*Flatley, supra*, 39 Cal.4th at p. 325.)

### B. *Haggett's and Fewer's Alleged Statements Were Protected by Section 425.16*

The first prong of the relevant analysis required respondents to make a prima facie showing that Schaffer's causes of action arose from respondents' acts "in furtherance of [their] right[s] of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

By statutory definition, an " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding . . . ; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; . . . (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or

---

[2] In pertinent part, section 425.16 provides: "(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Here, Fewer allegedly wrote a memorandum to the district attorney asserting collusion between Schaffer and a witness, and Haggett allegedly signed two affidavits asserting Schaffer committed crimes. The memorandum and affidavits were "written . . . statement[s] . . . made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2); see, e.g., *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1286 [74 Cal.Rptr.3d 873] [communications with district attorney and police and attempts to press charges were communications seeking official investigations into perceived wrongdoing and thus protected by § 425.16].) Further, respondents argue, Haggett's two charging affidavits were "writing[s] made before a . . . judicial proceeding." (§ 425.16, subd. (e)(1).) Thus, they urge, the causes of action based on these statements are subject to the anti-SLAPP statute.

Schaffer does not dispute that Fewer's memorandum and Haggett's affidavits were written statements made in connection with an issue under consideration by an official proceeding. Nonetheless, she contends, they are not within the scope of the anti-SLAPP statute because they were not made by private citizens in furtherance of their free speech and petition rights, but by police officers in the course and scope of their job duties. In essence, she maintains, the anti-SLAPP statute only protects acts that are in furtherance of the First Amendment right of free speech and right to petition the government for redress of grievances, and police officers doing their job are not exercising First Amendment rights.

In this regard, Schaffer relies on *Garcetti v. Ceballos* (2006) 547 U.S. 410 [164 L.Ed.2d 689, 126 S.Ct. 1951] (*Garcetti*). In *Garcetti*, a deputy district attorney wrote internal memoranda to his supervisors, asserting that an affidavit used to support a search warrant contained misrepresentations. (*Id.* at p. 414.) The deputy testified to the same effect for the defense at a hearing on the defendant's motion challenging the warrant. (*Id.* at pp. 414–415.) Thereafter, he claimed, he was subjected to retaliatory employment actions, including reassignment, transfer, and denial of a promotion. (*Ibid.*) He sued under 42 United States Code section 1983. (*Garcetti*, at p. 415.) Before the United States Supreme Court, the issue was whether "the First Amendment protects a government employee *from discipline* based on speech made pursuant to the employee's official duties." (*Garcetti*, at p. 413, italics added.) The court determined that Ceballos did not speak as a citizen when he wrote

the memorandum and thus did not engage in constitutionally protected speech. (*Id.* at p. 422.) The court explained: "The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. . . . That consideration—the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case—distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline. We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." (*Garcetti*, at p. 421.) Thus, *Garcetti* emphasized that a public employee must speak both on a matter of public concern and as a citizen to be protected under the First Amendment. (*D'Angelo v. School Bd. of Polk County, Fla.* (11th Cir. 2007) 497 F.3d 1203, 1209.)

Schaffer contends that here, as in *Garcetti, supra*, 547 U.S. 410, Fewer and Haggett were acting as police officers and their acts and statements were made pursuant to their duties.[3] Respondents distinguish *Garcetti* in that it addressed a narrow issue—a public employer's discipline for public employees—and reflected a concern that private employees have no First Amendment protections against employer discipline. They urge that *Garcetti* does not stand for the broader proposition that public employees enjoy no First Amendment protections for statements made in the course and scope of their employment.

In her reply brief, Schaffer brings to our attention *Morales v. Jones* (7th Cir. 2007) 494 F.3d 590 (*Morales*). There, vice officer Kolatski learned from a third party that the police chief and deputy chief had harbored the deputy chief's brother, who was wanted on felony warrants. (*Id.* at p. 592.) Kolatski informed vice officer Morales, with whom he was investigating the case. (*Id.* at p. 593.) Morales in turn informed the assistant district attorney. (*Id.* at p. 594.) The police chief then reassigned Kolatski to street patrol. (*Id.* at p. 595.) Morales, in a deposition in another matter, testified about the allegation of the chief and deputy chief harboring the deputy chief's brother and opined that Kolatski was reassigned as a result of the allegation. (*Ibid.*) Thereafter, Morales was reassigned to night shift patrol duty. (*Ibid.*) Morales and Kolatski filed a lawsuit under 42 United States Code section 1983,

---

[3] Schaffer alleges in her complaint that Fewer was acting as an agent or employee of the Getty family, not as a police officer. She offers no ground for challenging the order granting the motion to strike based on this allegation. Instead, she relies on the evidence submitted by respondents that Fewer was acting within the scope of his duties as a police officer.

alleging a violation of their First Amendment rights. (*Morales*, at pp. 592, 595.) The jury ruled in their favor. (*Id.* at p. 595.)

On appeal, the defendants argued that Morales's and Kolatski's statements were made pursuant to their official duties, so any adverse employment action in retaliation for those statements did not violate their First Amendment rights. (*Morales, supra*, 494 F.3d at p. 595.) The court concluded: Kolatski's statement to Morales about the third party's allegation was not protected under the First Amendment because it was made pursuant to his official duties; Morales's conversation with the assistant district attorney was also pursuant to his official duties because he met with him in his capacity as an officer, and not on his own time; but Morales's deposition testimony, pursuant to a subpoena in a civil lawsuit, was not provided as part of his job duties and was therefore protected by the First Amendment. (*Morales*, at pp. 597–598.)

Neither *Garcetti* nor *Morales* addressed whether police officers' statements in the course of their duties constitute acts in furtherance of their constitutional rights of free speech or petition within the meaning of California's anti-SLAPP statute. This distinction is critical, because the salient question in this case is not whether respondents' acts are protected as a matter of law under the First Amendment of the United States Constitution in some other context, but whether they fall within the statutory definition of conduct that the Legislature deemed appropriate for anti-SLAPP motions.

 Schaffer contends a number of cases state that acts are protected under the anti-SLAPP statute only if they are in furtherance of First Amendment rights of petition and free speech. To the contrary, none of those cases suggests that the first prong of the anti-SLAPP statute ·is coextensive with those federal constitutional provisions. In the first place, the cases recognize that the statute also applies to acts protected under the California Constitution—a matter that neither *Garcetti* nor Schaffer addresses. Moreover, in determining whether the conduct in question was protected under the anti-SLAPP statute, the courts looked not to First Amendment law but to the statutory definition set forth in section 425.16, subdivision (e). In *Equilon*, our Supreme Court stated: "The only means specified in section 425.16 by which a moving defendant can satisfy the requirement" that the defendant's conduct arose from the defendant's protected speech or petitioning activity is to demonstrate that the conduct "falls within *one of the four categories described in subdivision (e), defining subdivision (b)'s phrase*, 'act in further-ance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' . . . [¶] . . . [¶] . . . The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California

Constitution in connection with a public issue,' *as defined in the statute*." (*Equilon, supra*, 29 Cal.4th at pp. 66–67, italics added, citation omitted; see also *Navellier v. Sletten* (2002) 29 Cal.4th 82, 95 [124 Cal.Rptr.2d 530, 52 P.3d 703] ["[S]ince plaintiffs' action against [the defendant] is based on his constitutional free speech and petitioning activity *as defined in the anti-SLAPP statute*, [the defendant] met his threshold burden of [showing the causes of action arose from activity] protected by the anti-SLAPP statute." (italics added)].)

Moreover, whatever *Garcetti*'s scope may be in clarifying the application of the First Amendment to public employees, by no means does it suggest that California cannot set up procedural protections against lawsuits that target acts the state deems to fall within provisions of the United States or California Constitution. Indeed, the anti-SLAPP statute is not an immunity statute; it provides a means by which defendants can protect themselves against certain meritless claims at an early stage of the litigation.[4]

Of greater assistance to our analysis, therefore, is *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108 [57 Cal.Rptr.2d 207] (*Bradbury*), which actually dealt with California anti-SLAPP law. There, a district attorney issued a public report questioning the veracity of an affidavit that had supported a search warrant and challenged the motive of the deputy sheriff who conducted the search. (*Bradbury*, at p. 1112.) The deputy sheriff sued the district attorney, the county, and others for causes of action including defamation and violation of his civil rights. (*Ibid.*) The trial court denied the defendants' anti-SLAPP motion to strike on the ground the anti-SLAPP statute protects only private citizens, since governmental entities and their representatives have no First Amendment rights. (*Bradbury*, at pp. 1112–1114.)

 The judgment was reversed. The appellate court noted that governmental entities and their representatives *do* enjoy First Amendment protections in regard to statements they make on matters of public concern.

---

[4] Other cases to which Schaffer cites are inapposite. In *Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424 [57 Cal.Rptr.3d 885] (*Morrow*), a principal brought an action against a school district and its superintendent, alleging invasion of privacy and defamation, based on statements they made to the Los Angeles Times regarding the principal's handling of student violence on campus. The defendants filed an anti-SLAPP motion to strike. In deciding whether the defendants' statements were subject to the anti-SLAPP statute, the issue was whether the statements concerned the public interest (and were thus in connection with a public issue) or revealed private personnel details. (*Id.* at pp. 1436–1437.) *Morrow* distinguished *Garcetti* because *Garcetti* addressed a public employer's discipline of a public employee for statements made in the course of his duties, rather than a government official's public comments on official matters. (*Id.* at p. 1437, fn. 6.) In any event, Morrow is distinguishable from the matter at hand, because Morrow concerned whether the statements were in connection with a public issue, not whether they were protected by the First Amendment.

(*Bradbury, supra*, 49 Cal.App.4th at p. 1114.)[5] ▇ Noting that governmental entities and their employees constitute a "person" within the meaning of the anti-SLAPP statute, the court opined: "The anti-SLAPP suit statute is designed to protect the speech interests of private citizens, the public, *and governmental speakers*." (*Bradbury*, at p. 1117, italics added.) The court ruled: "Petitioners had a *First Amendment right* to keep the public informed, issue the report, respond to media questions, and ask other law enforcement agencies to conduct their own investigation. [Citations.] A contrary holding would impermissibly chill the exercise of First Amendment rights." (*Bradbury*, at p. 1116.) ▇ In fact, "section 425.16 extends to public employees who issue reports and comment on issues of public interest relating to their official duties." (*Bradbury*, at p. 1115.) Thus, "[p]etitioners made a prima facie showing that the report and media statements related to an official investigation, were made in a public forum, and involved an issue of public interest." (*Id.* at p. 1117.)

Moreover, *Bradbury* confirmed that communications *among* law enforcement personnel are protected as well. The court concluded: "[p]*rivate* conversations concerning the report were also protected under the anti-SLAPP statute. (E.g., [*Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1174–1176 [50 Cal.Rptr.2d 62] [anti-SLAPP statute applied to a private conversation regarding a public issue]].) The request that the Los Angeles County Sheriff and other law enforcement agencies investigate the matter was in furtherance of the right to petition government for grievances. [Citation.]" (*Bradbury, supra*, 49 Cal.App.4th at p. 1117, italics added.)

▇ In the final analysis, what is covered by the anti-SLAPP statute is clearly set forth in the plain unambiguous language of the statute itself, which we are called to interpret broadly. (§ 425.16, subd. (a).) The Legislature expressly mandated that "*any* written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" *is* "*include*[*d*]" within the statutory definition of an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue.' " (§ 425.16, subd. (e), italics added.) ▇ Schaffer fails to persuade us that the

---

[5] *Bradbury* relied on *Nadel v. Regents of University of California* (1994) 28 Cal.App.4th 1251, 1266–1267 [34 Cal.Rptr.2d 188] (in defamation action, 1st Amend. protection was extended to government speech concerning a matter of public interest, because government should be liable for defamation of a public official or public figure only where there is knowledge of falsity or reckless disregard of the truth) and *Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 376–377 [54 Cal.Rptr.2d 781] (responses by city employees to requests for information, concerning a matter the city was involved in by virtue of its governmental function, constituted discussion of governmental affairs, which are protected by the 1st Amend.). (*Bradbury, supra*, 49 Cal.App.4th at pp. 1115–1116.)

Legislature intended to omit police officer statements when it used the phrase "*any* . . . statement" in subdivision (e); and a defendant need not establish anything more than what is set forth in subdivision (e) to carry its burden in an anti-SLAPP proceeding. (See, e.g., *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113–1114 [81 Cal.Rptr.2d 471, 969 P.2d 564] [statements made in connection with an official proceeding need not also be shown to pertain to a matter of public interest].) Thus, by demonstrating that Fewer's and Haggett's alleged statements were in connection with an issue under consideration by the district attorney, respondents made a prima facie showing that the acts underlying Schaffer's causes of action are within the ambit of the anti-SLAPP statute.[6]

■ Contrary to Schaffer's suggestion, nothing in our decision should discourage citizens from filing legitimate lawsuits for police misconduct. As applied in this context, the anti-SLAPP statute does not immunize police officers from misconduct; it merely attempts to insulate them from having to litigate plainly *unmeritorious* lawsuits, the possibility of which would otherwise chill their ability to make statements in connection with official proceedings, as their duties to the public require. If, in fact, there *is* merit to the plaintiff's cause of action, the plaintiff can avoid dismissal simply by establishing a probability of prevailing. We discuss this issue next.[7]

## C. *Probability of Prevailing on the Claim*

In the second phase of the relevant analysis, Schaffer had to demonstrate, with admissible evidence, a probability she would prevail on her claims. All of the evidence Schaffer presented, however, was ruled *inadmissible*; Schaffer

---

[6] Schaffer argues that any right of Haggett or Fewer to communicate with the district attorney must be weighed or balanced against Schaffer's right to petition the government by filing this lawsuit. However, section 425.16 does not provide for any balancing test to determine if the defendant's actions were in furtherance of the freedom of speech or right of petition and in connection with a public issue. If any balancing were appropriate, it would be done in the secondary phase of the analysis, pertaining to whether the plaintiff can demonstrate a probability of prevailing on the merits.

[7] We also note that the anti-SLAPP statute's protection of private citizens who make statements in furtherance of their First Amendment rights of petition and speech derives from the overarching purpose of facilitating public participation in judicial proceedings and other matters of public concern. If a statement by a private citizen is protected by the anti-SLAPP statute to further that statutory purpose, the same statement made by a police officer on behalf of that private citizen should also be protected to further the statutory purpose. (See *Briggs, supra,* 19 Cal.4th at p. 1116 [§ 425.16 does not require a defendant to show that its protected statement was made on its own behalf]; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1398–1399 [53 Cal.Rptr.3d 647] [§ 425.16 applied to lawsuit challenging defendant's statements in handling administrative grievance proceeding, where defendant was acting in furtherance of the employee's right to petition, not her own].) Our reliance on the language of section 425.16, subdivision (e), thus satisifies the aim of the anti-SLAPP statute to further First Amendment rights of free speech and petition.

does not challenge this ruling. Nor does she challenge the trial court's determination that she failed to establish a probability of success on the merits.[8]

Schaffer fails to establish that the court erred in granting respondents' motion to strike.

### D. *Request for Leave to Amend*

Schaffer contends that paragraph 14 of her complaint can be read to allege a conspiracy among Fewer, Haggett, and Assistant District Attorney Bautista to file misdemeanor charges against her (and, implicitly, to have her arrested). In opposition to the demurrers subsequently deemed moot, Schaffer requested leave to amend her complaint to state a cause of action under 42 United States Code section 1983, to allege a conspiracy among Haggett, Fewer, and others to violate her equal protection rights by targeting her for selective arrest and prosecution.

In denying leave to amend in the order granting the motion to strike, the trial court observed that Schaffer "cannot escape the anti-SLAPP procedures by simply amending her complaint," citing *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 [112 Cal.Rptr.2d 397] (*Simmons*) and *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1055 [18 Cal.Rptr.3d 882].

In *Simmons*, the court opined that "[a]llowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy." (*Simmons, supra*, 92 Cal.App.4th at p. 1073.) If amendment was allowed, the court explained, "the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent." (*Simmons*, at p. 1074.) The court concluded: "the omission of any provision in section 425.16 for leave to amend a SLAPP complaint was not the product of inadvertence or oversight." (*Simmons*, at p. 1074.)

Schaffer did not directly address *Simmons* or *Sylmar* in her appellate briefs, or provide us any sufficient basis for diverting from their holdings. She therefore fails to establish that the court erred in denying leave to amend.

---

[8] At oral argument, Schaffer admitted that she did not demonstrate a probability of success on the merits because Fewer and Haggett have immunity. Accordingly, whether the anti-SLAPP statute applies or not, her claims against the officers apparently have no merit. Schaffer's inability to prove her claims dovetails with the aim of the anti-SLAPP statute, which is to discourage the filing of, and to expedite the dismissal of, meritless claims.

### III. *DISPOSITION*

The judgment is affirmed.

Jones, P. J., and Simons, J., concurred.

A petition for a rehearing was denied December 23, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 25, 2009, S169495.