Filed 7/7/14  Judge v. Randall CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| GREGORY A. JUDGE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LORI RANDELL,<br><br>        Defendant and Appellant. | A138481<br><br>(Marin County<br>Super. Ct. No. CIV1204833) |

Lori Randell (Randell) appeals from an order denying her motion to strike a defamation cause of action from the complaint of respondent, Gregory Judge (Judge), pursuant to the "anti-SLAPP" statute.  (Code Civ. Proc., § 425.16 (section 425.16).)  Randell contends the trial court erred in ruling that Judge had shown a probability of prevailing on the merits.  Judge cross-appeals.  We will affirm the order.

## I.  FACTS AND PROCEDURAL HISTORY

Judge, proceeding in propria persona, filed a verified complaint in the Marin County Superior Court on October 29, 2012, asserting causes of action for breach of contract and defamation against Randell and Jeffrey M. Glassman (Glassman).

### A.  Allegations of the Complaint

Judge alleged that he entered into an oral contract with Randell in July 2012, by which Judge (doing business as Greg Judge Tile) would install approximately 800 square

1

feet of flagstone onto an existing concrete slab in Randell's backyard for $7,975. Judge gave Randell a written contract to sign, but despite his repeated requests and commencement of the work, Randell declined to sign the contract, told Judge that her attorney would contact him, and expelled Judge from the job site without payment.

On August 1, 2012, Judge allegedly received an email from Glassman, whom Judge assumed at the time was Randell's attorney. In the email, Glassman offered partial payment if Judge would sign a "lien release." Judge declined, and the next day served Randell with a mechanics lien on her property.

For his breach of contract claim, Judge alleged that Randell breached their oral contract and sought the $7,975 contract price plus his costs pertaining to the mechanics lien.

Judge further alleged that Randell and Glassman, whom Judge had since come to believe are "one in the same person," thereafter barraged him with emails containing threats, disparaging remarks, profanity, and defamatory allegations intended to intimidate him into abandoning the mechanics lien. Judge asserted that Randell in fact had a practice of scamming laborers by having them render services, demanding they leave the job site for false reasons, and then negotiating a small fraction of the amount due. Paragraph 13 of his verified complaint represented that a copy of the emails he received from Randell/Glassman was contained in Exhibit C to the complaint. The last page of Exhibit C included a declaration under penalty of perjury, signed by Judge, that Exhibit C was a "true and accurate account." [1]

---

[1] As the months passed and litigation threats were exchanged, the emails purportedly authored by Randell and Glassman became more abusive. In October 2012, Glassman wrote Judge: "I will bring the wrath of hell into your life if I have to drag your sorry ass into court. [¶] That, my friend, is a THREAT. You are fucking with the wrong guy." Randell emailed Glassman, with a copy to Judge: "Let's drown him [Judge] in legal bills and have his licensed [*sic*] revoked"; she also threatened Judge that he could "lose visitation rights if we show the court how dangerously you behave." Glassman wrote: "If this moron [referring to Judge] acts as his own attorney, can I sell tickets?? It's gonna be the best comedy since The Three Stooges! [¶] Here's a good one for ya' Greg—if you can't find me to subpoena me to court, what judge is going to approve

As to his defamation claim, Judge alleged that Randell/Glassman did not stop at sending emails, but proceeded to publish disparaging reviews of Greg Judge Tile on multiple Internet sites. These reviews allegedly contained false and defamatory statements and were intended to interfere with Judge's prospective economic advantage and intimidate him into abandoning the mechanics lien. Specifically, beginning around September 26, 2012, "Glassman" posted reviews on Merchantcircle.com, Manta.com, and PrimeBuyersReport.com that included the following assertions about Judge: "Inethical, Untrustrworthy [*sic*], Files Spurious Liens, Damages Property"; "This tile contractor lied about his license credentials"; "None of these idiots had ever seen him, or touched flagstone before"; "In a drunken rage, he maliciously damaged $1000.00 of flagstone material, which had to be entirely replaced"; "Then, the drunken moron filed a spurious lien to retaliate for not getting the job"; "This proves that he knew that his lien was spurious"; "We had to sue him to get the lien removed"; "We reported him to the CSLB and have requested that his license be permanently revoked"; "Greg Judge misrepresented himselfv [*sic*] as a General Contractor, showed up DRUNK on the second day of our job, with an undocumented crew from the Home Depot line, damaged $1000.00 worth of our flagstone and filed a SPURIOUS mechanics lien when we refused to sign his contract after all that. This guy is inethical [*sic*] and a real loose cannon. We are suing him in Small Claims for the flagstone and in civil court for slandering our title and harassing us with a spurious lien. He has also been reported to the CSLB for abuse." Judge attached purported copies of the reviews to his verified complaint as Exhibit D. According to Judge, "These statements are libel per se."

---

Discovery in a non-existent trial? LOL—or didn't you get that far in your legal education yet?? Here's a hint: I live in Florida. Have fun. [¶] Oh, and your provable qualitative damages from my 'libeling' you would be . . . . ?? Gotcha again, Dip Shit. LOL [¶] Did you know that you can be fined for filing a frivolous lawsuit in Marin County? Didn't get that far yet either, huh? [¶] Take your fucking lien off of my friend's property and crawl back into the sewer with your tail between your legs asshole. You're so far out of your league here, it ain't funny. You're a pathetic excuse for a man. Looking forward to chatting with Angela [Judge's ex-wife] . . . I'm planning a special trip in for the occasion. [¶] IDIOT!"

B.  Randell's Anti-SLAPP Motion to Strike

Randell filed a demurrer to the breach of contract cause of action and an anti-SLAPP motion to strike the defamation cause of action.[2]

1.  Randell's Motion

Randell argued that the anti-SLAPP statute applied to the allegedly defamatory statements posted on the contractor review Web sites, because they were made in a public forum in connection with a public issue; further, she urged, Judge could not show a probability of prevailing on the merits against her because Glassman, not Randell, allegedly posted those reviews.  In addition, she contended, her emails about Judge could not form the basis of a defamation claim because they were privileged or not published to a third party.

In support of her motion, Randell submitted a declaration averring that she did not write any of the allegedly defamatory reviews, she was not Glassman, and Glassman was actually a longtime acquaintance who helped her find contractors to do the work, reviewed their work, and loaned her money to pay for it.  Attached to her declaration was a printout of a Facebook page for a "Jeff Glassman."  In addition, Randell asserted that she was blind and permanently disabled and had "great difficulty reading and using a computer, and employ[ed] various adaptive aids in order to do so."

2.  Judge's Opposition

Judge acknowledged that his defamation claim was based on the reviews posted on the consumer Web sites, not Randell's emails.  He opposed the motion to strike, however, contending the defamation cause of action did not arise from protected activity because the reviews did not concern a matter of "public interest."  In addition, Judge disputed Randell's assertion that she and Glassman were not the same person:  he argued

---

[2]  Only the anti-SLAPP motion is at issue in Randell's appeal.  As to the breach of contract cause of action, the court sustained the demurrer with leave to amend on the ground that Judge had not adequately alleged that he held the appropriate license to do the work.  Judge asserts in his respondent's brief that he filed an amended complaint, an ensuing demurrer was overruled, and Randell filed an answer.

4

that, within 10 minutes after leaving the job site, he received an email from Glassman originating from Randell's IP address, asking for a reply via fax to a number that turned out to be Randell's home phone number; he further argued there was no indication that the Jeff Glassman depicted on the Facebook page was in fact the Jeffrey M. Glassman who submitted the reviews; and he asked the court for discovery to ascertain Glassman's existence and whereabouts.

Judge did not submit a declaration, but relied on the documentation attached to his verified complaint. In addition, he attached documents to his opposition memorandum, including his response, signed under penalty of perjury, to a consumer complaint Randell had made to the district attorney. In this sworn response, Judge refuted Randell's allegations, including her allegation that he was drunk at work.

### 3. Randell's Reply

In her reply, Randell contended that Judge had not offered competent evidence that Glassman was her alter ego, but she nevertheless presented additional evidence that he was not: declarations from four individuals attesting that Glassman existed; her own declaration that the Glassman referred to in the Facebook page was indeed the Glassman who assisted her with her patio; and printouts of Facebook pages indicating that Glassman had made comments on Randell's Facebook page. As to the fact that Glassman's email originated from her IP address, Randell explained that Glassman was at her house when he wrote the email to Judge. In addition, Randell contended that Judge failed to prove the falsity of the consumer reviews, his attachments to his opposition memorandum suggested that some of her statements were true, and he failed to submit evidence that she knew the statements were false or made them with malice.

### 4. Trial Court's Ruling

The court ruled that the anti-SLAPP statute applied under section 425.16, subdivision (e)(3), because the consumer Web sites on which the reviews were posted constituted public forums, and the reviews were made in connection with an issue of public interest as consumer protection information. The court denied the motion to

5

strike, however, on the ground that the evidence disclosed a probability that Judge would prevail on his claim. Although the court found that Randell's evidence "defeat[ed]" Judge's assertion that Randell and Glassman are the same person, it further found that "the evidence in this record could support a finding that Glassman was acting as Rand[e]ll's *agent* for this purpose, and Rand[e]ll is liable as the *principal* who approved these defamatory comments." (Underscoring and italics in original.) In this regard, the court noted that an email from Glassman, sent from Randell's computer, stated that Randell was Glassman's partner, and many of the allegedly defamatory reviews referred to "*our* job" or similarly indicated that Glassman was representing Randell's interests when he published the comments. As to the falsity of the comments, the court found that Judge's sworn denial to the district attorney that he had been drunk at work demonstrated that he could testify to the falsity of the assertion that he was drunk, and Randell's own letter to the district attorney contradicted the statement in the reviews that Randell had to sue Judge for damage to the flagstone. Lastly, the court concluded, the record showed that Judge could prove actual malice, because if the trier of fact believed Randell falsely stated that Judge was drunk, it could also conclude that she knew her statement was false.

This appeal, and Judge's cross-appeal, followed.

## II. DISCUSSION

"Section 425.16 authorizes a defendant to file a special motion to strike when a cause of action arises from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. It establishes a procedure by which the trial court evaluates the merits of the plaintiff's claim using a summary-judgment-like procedure at an early stage of the litigation. [Fn. omitted.] (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312 . . . (*Flatley*); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 . . . .) The purpose is to curb the chilling effect that certain litigation may have on the valid exercise of free speech and petition rights, and the statute is to be interpreted broadly to accomplish that goal. (§ 425.16, subd. (a).)" (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1180-1181 (*Wallace*).)

6

" 'In its motion, the defendant must make a threshold showing that the plaintiff's cause of action arises from the defendant's free speech or petition activity, as specified in the statute. (§ 425.16, subds. (b), (e).) The burden then shifts to the plaintiff to establish a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 67 . . . .) If the plaintiff fails to do so, the motion to strike is granted and the prevailing defendant is entitled to recover his or her attorney fees and costs. (§ 425.16, subd. (c).) We review an order granting or denying a motion to strike under section 425.16 de novo. (*Flatley, supra*, 39 Cal.4th at p. 325.)' (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1547 . . . ; see *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 998 . . . .)" (*Wallace, supra*, 196 Cal.App.4th at p. 1181.)

A. <u>First Prong: Protected Activity</u>

The first prong of the anti-SLAPP analysis required Randell to make a threshold showing that Judge's defamation cause of action arose from acts "in furtherance of [her] right[s] of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) By statutory definition, an "act in furtherance of a person's right of petition or free speech . . . in connection with a public issue" includes "any written or oral statement or writing made in . . . a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).)

As the trial court determined, the allegedly defamatory online reviews were made in a public forum in connection with an issue of public interest. (§ 425.16, subd. (e)(3).) Public Web sites, such as the sites on which the reviews about Judge were posted, are public forums for purposes of the anti-SLAPP statute. (*Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146 (*Chaker*) ["[t]he Internet is a classic public forum"]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366 (*Wong*) [Web sites accessible to the public are public forums]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 900 (*Wilbanks*) [consumer advocate's personal Web site was a public forum].)

And reviews that warn other consumers not to use a party's services constitute consumer protection information in connection with an issue of public interest. (*Chaker, supra*, 209 Cal.App.4th at p. 1146 [allegations about plaintiff's character and business practices on a Web site review of his "counterforensics" business]; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 23 (*Gilbert*) [statements about a plastic surgeon that might be material to people contemplating plastic surgery]; *Wilbanks, supra,* 121 Cal.App.4th at p. 900 [statements about an insurance broker that constituted a consumer warning not to use the services]; see also *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 344 [statements published in a newspaper article warning consumers not to use the services of a medical practitioner "were in the nature of consumer protection information"].)

Here, the consumer reviews about Judge stated that he had "lied about his license credentials," "damaged [over] $1000.00 of flagstone material," was "inethical [*sic*]," and was reported to the state licensing board for abuse. This information transcends a parochial dispute between the parties and warns other potential consumers against using Judge's services, thereby falling within the ambit of consumer protection information.

Judge's arguments to the contrary are unpersuasive. First, he attempts to distinguish his case on the ground that the reviews about him were not written with the intent of protecting consumers, but to intimidate, threaten, and compel him not to seek payment, and to inflict pain, suffering, and revenge. Furthermore, he argues, more people had an interest in the subject matter at issue in *Wilbanks* and *Wong* than they do in his qualifications to install flagstone. However, regardless of the author's intent or the *relative* number of interested consumers, the reviews about Judge contained consumer information of interest to untold numbers of consumers contemplating the type of services Judge purported to provide. Viewing the anti-SLAPP statute broadly, as we must, the reviews fall within the scope of the statute.

Judge also argues that the anti-SLAPP statute does not apply because defamation is not protected by the constitutional right of free speech. The question, however, is not whether the reviews fall within the protections of free speech rights, but whether they fall

8

within the scope of subdivision (e)(3) of section 425.16. (*Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1001-1004.) They do.

B. Second Prong: Probability of Prevailing

Because Randell satisfied her burden of establishing that the defamation cause of action arose from protected activity, the burden shifted to Judge to establish a probability of prevailing on his defamation claim. This burden can be met only by competent admissible evidence. (See, e.g., *Gilbert, supra,* 147 Cal.App.4th at p. 26.) However, the court does not evaluate the credibility of the evidence or weigh competing evidence; rather, it accepts as true all the evidence favorable to Judge and assesses Randell's evidence only to determine if it defeats Judge's submission as a matter of law. (*Chaker, supra,* 209 Cal.App.4th at p. 1147.) Moreover, the requisite showing is not high: Judge needed to show only a "minimum level of legal sufficiency and triability," articulated by some courts as "minimal merit." (*Ibid*.; see *Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490.)

Randell contends there was no admissible evidence to support (1) the court's conclusion that Glassman was Randell's agent, (2) the element of defamation that statements in the reviews were false, or (3) the element of actual malice required for presumed or exemplary damages. We disagree on all counts.

1. Glassman as Pseudonym or Agent

"The general rule for defamation is that only one 'who takes a *responsible* part in the publication is liable for the defamation.' " (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 549.) Thus, a person who is not involved in the "preparation, review or publication" of allegedly defamatory statements cannot be subject to liability in a defamation action. (*Ibid*.) Accordingly, Judge had to provide evidence that Randell either authored the reviews or was otherwise sufficiently involved in their preparation, review or publication.

On their face, the reviews were posted by Glassman. Judge contended, however, that Glassman was really Randell; the trial court, on the other hand, concluded that Glassman and Randell were not the same person, but there was sufficient evidence that

9

Glassman was acting on Randell's behalf. We find the evidence adequate to support either theory.

### a. Pseudonym Theory

Randell argues that Judge failed to offer admissible evidence that Randell authored or posted the reviews, but merely alleged, on information and belief, that she was using Glassman as a pseudonym. Randell urges this was insufficient, because in opposing an anti-SLAPP motion to strike, "[t]he plaintiff may not rely on the allegations in the complaint or assertions in a declaration based on information and belief." (*Wong*, *supra*, 189 Cal.App.4th at p. 1368.) In addition, Randell points out, she submitted admissible evidence that she and Glassman were not the same person.

Contrary to Randell's argument, the record contains evidence from which a trier of fact could reasonably conclude that Randell authored the reviews using Glassman's name as a pseudonym.[3] In his opposition to the motion to strike, Judge argued that emails ascribed to Glassman emanated from Randell's IP address and contained a fax number that was Randell's telephone number; in addition, Judge asserted that AOL.com allows subscribers up to 10 email accounts, which can bear any name the account owner desires, such that Randell could have created an email account using Glassman's name. The emails, attached to Judge's verified complaint and authenticated under penalty of perjury, confirmed that Randell's and Glassman's email addresses were both on AOL.com. And although Judge did not provide admissible evidence that the Glassman emails came from Randell's IP address and referred to her fax number, Randell *did*: in her declaration, she acknowledged that at least one email purportedly from Glassman to Judge emanated from Randell's IP address, and the fax number was indeed hers. While Randell provides an explanation for these facts, one reasonable explanation is that Randell wrote the emails

---

[3] Randell contends the trial court determined that Judge failed to establish that Randell published the online reviews at issue. Not so. The court merely determined that Randell's evidence showed Randell and Glassman are not the same person. In any event, we may affirm the trial court's ruling on any proper ground asserted by a party, even if the trial court did not rely on that ground in making its decision. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.)

using Glassman's name, thus suggesting a practice of using Glassman's name as a pseudonym.

Indeed, the language of the emails ostensibly authored by Glassman was similar to the language of writings attributed to Randell. For example, an email purportedly from Glassman to Judge on October 24, 2012, included the phrase, "Trust me on this one." The "Declaration of Lori Randell" submitted in support of her consumer complaint to the district attorney in November 2012 included the phrase, "Trust me on that one." The substance of the Glassman and Randell writings was similar as well. One reasonable explanation is that Randell authored both.

Turning to the allegedly defamatory reviews themselves, the reviews bore Glassman's name and, on multiple occasions, Glassman's email address on AOL.com. The content of the reviews was similar to the content of Randell's writings. Although by no means dispositive, the evidence is susceptible to the interpretation that Randell not only used Glassman's name to write emails, she used his name to write the allegedly defamatory reviews too.

Randell refers us to her two declarations averring she is *not* "one and the same person" as Glassman, Glassman is actually a longtime acquaintance who assisted her with her patio project, and she did not fabricate Glassman in order to defame Judge. She also points to the declarations from other individuals who asserted that Glassman is a real person, as well as the prelitigation communications she purportedly received from Glassman on Facebook. Randell argues that the "inescapable inference" is that Glassman acted independently in writing the reviews. Not so.

In the first place, Judge debates the veracity of the declarations and the Facebook pages. But even accepting Randell's contention that the evidence showed Glassman and Randell are *not the same person*, it does not show dispositively who actually *wrote the reviews*, let alone whether Randell participated in their preparation, review, and publication. In short, a finding that Randell and Glassman are not the same person would not necessarily prove that Randell did not author the reviews using Glassman's name. And while Randell averred that she was not aware of and did not participate in or

11

authorize Glassman's posting of the reviews, her assertions merely create a dispute in the evidence.

### b. Agency Theory

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) Agency may be actual or ostensible. (Civ. Code, § 2298.) An actual agency may arise by express agreement, be implied from the conduct of the parties, or arise by ratification. (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571.) It is not enough that two individuals had a preexisting relationship; an agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent. (*Id.* at p. 572.)

Admissible evidence supported an inference that Glassman acted as Randell's agent. Randell herself presented evidence that she was blind and disabled and had difficulty using a computer. She stated in her declaration that Glassman was helping her with the patio project. According to Randell, Glassman was the author of the emails to Judge—composed on and sent from her home computer—that attempted to negotiate a resolution of Randell's dispute with Judge and later threatened to sue him. A reasonable inference is that Glassman wrote these communications on her behalf, at her direction, or at least with her knowledge. Many of Glassman's other emails to Judge were also sent to Randell, giving her notice of this correspondence as well. Further, Randell explicitly exhorted Glassman to action on her behalf, telling Glassman (in an email copied to Judge): "Let's drown [Judge] in legal bills and have his licensed [*sic*] revoked."

Moreover, further evidence—in the reviews themselves—indicated that Glassman posted the reviews for Randell, within the scope of his authority as her agent. Even though the flagstone contract was between Judge and Randell only, the reviews ostensibly authored by Glassman were written in the first person plural ("we"): as the trial court noted, many of the allegedly defamatory comments referred to "our" job; "we" had to sue him; "we" found out the truth; "we" reported him to the CSLB; and "we

12

refused to sign his contract." The reviews also contained matters that Glassman would not have known about, unless Randell had told him. From this evidence, a trier of fact could reasonably conclude that Randell had authorized Glassman to write the defamatory reviews on her behalf, just as she had authorized him to write emails on her behalf, or at least that Randell was involved in the preparation, review or publication of the reviews.

Randell contends the trial court ignored evidence of the *lack* of an agency relationship, including Glassman's posting of the reviews under his name and email address only, his loan to Randell for the project, and his separate communications with Judge and a Web site publisher. But none of this evidence dispositively precludes the conclusion that Glassman wrote the reviews as Randell's agent; at most, it creates a triable issue.

Randell also refers us to *Wong, supra*, 189 Cal.App.4th 1354. In *Wong*, a dentist brought a defamation action against a husband and wife, claiming they posted a slanderous complaint about her on Yelp. (*Id*. at p. 1361.) The posting did not identify the name of the person who wrote it, but included initials that matched those of the husband. (*Id*. at p. 1368.) In a declaration, the husband stated that he wrote and posted the review without his wife's knowledge; the wife averred that she did not write or even know about the review until after it was posted. (*Id*. at p. 1363.) The appellate court ruled that an anti-SLAPP motion to strike should have been granted with respect to the wife, because there was no evidence that she had anything to do with the review and its posting, and the posting itself—bearing the husband's initials only—supported an inference that the wife was not involved. (*Id*. at p. 1368.) The court explained, "Indeed, the review is written in the first person, which implies that the review was written and posted by one person and reflects only that person's sentiments." (*Ibid*.)

*Wong* does not help Randell. In *Wong*, there was no evidence that the wife was aware of the review; here, there was evidence that Randell did know about the reviews: she was intimately involved in the dispute and the communications with Judge concerning the project—indeed, it was her project—and Judge sent an email to Randell complaining about " 'libelous' reviews." Moreover, in *Wong*, the husband presented a

13

declaration asserting that the wife was not involved in the review; here, the record does not contain any declaration from Glassman disavowing Randell's involvement. Lastly, in *Wong*, the review was "written in the first person, which implies that the review was written and posted by one person and reflects only that person's sentiments." (*Wong, supra*, 189 Cal.App.4th at p. 1368.) Here, the reviews were written in the first person *plural*, which arguably implies that the review was written and posted by more than one person and reflects the sentiments of both.

We acknowledge that Judge did not allege an agency theory in the trial court. (See *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 236 [" 'As in a motion for summary judgment, the pleadings frame the issues to be decided' "].) But we find no prejudice to Randell in this regard. First, the agency theory was a natural fallback to the pseudonym theory: if the reviews were not penned by Randell but by Glassman, the next foreseeable question would be why he wrote them, and agency would be one reasonable answer. Indeed, the pseudonym theory and the agency theory are two sides of the same coin: they provide alternative ways of proving the single issue of whether Randell was involved in the preparation, review or publication of the defamatory comments. Second, Randell does not suggest any evidence she could have presented to rebut the agency theory, if it had been raised explicitly by Judge in the trial court, beyond what she raised or could have raised to rebut the pseudonym theory. At bottom, the evidence disclosed a probability that Judge could prove Randell's participation in the creation and posting of the reviews so as to subject her to liability for defamation.

### 2. Falsity

A defamation claim requires proof of a publication that is false, defamatory, and unprivileged, and that has a natural tendency to injure or causes special damage. (*Wong*, *supra*, 189 Cal.App.4th at p. 1369.) Of these elements, the " ' "sine qua non of recovery for defamation . . . is the existence of falsehood." ' " (*Id.* at p. 1370.) Where "the speech involves a matter of public concern, a private-figure plaintiff has the burden

14

of proving the falsity of the defamation." (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 747 (*Brown*).)

As the trial court noted, admissible evidence in the record indicated the falsity of at least two of the statements in the reviews: (1) that Judge was drunk on the job, and (2) that Randell had to sue Judge for reimbursement of damaged flagstone.[4]

In Judge's sworn response to the district attorney concerning Randell's consumer complaint, Judge expressly denied ever being drunk on the job. We find this statement, made under penalty of perjury, to be the functional equivalent of a declaration; indeed, Randell herself relied on Judge's response to the district attorney as evidence. We further conclude that Judge's denial is evidence from which a trier of fact might reasonably decide that Randell's assertion was false. Although Randell points out that Judge also stated in the response that on his drive back to the job site he "stopped for lunch," ordered a burrito and "a bottle of Bud," and "arrived at the site mid afternoon," that is not an admission he was drunk: the totality of Judge's statement is that, although he purchased and presumably consumed a bottle of beer, he was *not* drunk. If believed by the trier of fact, Judge's denial would establish the falsity of Randell's aspersion.

In regard to the statement that Judge had to be sued to recover the cost of replacing the damaged flagstone, Randell's own declaration to the district attorney suggested the assertion was untrue. Randell stated: "I was so distraught about having to replace $1000.00 worth of flagstone and wait another week for the next delivery date in Marin, that I burst into tears [while on the phone with the vendor] . . . . The VP of Operations felt so terrible that he later *replaced the entire order free of charge and delivered it to me at no charge 2 days later*." As the trial court found, a trier of fact could therefore reasonably conclude that her assertion, "We had to sue [Judge] . . . to get the money back" for the damaged flagstone, was false. Randell argues that there was evidence in

---

[4]     Randell argues that only the first statement is material to this appeal because it is the only statement that the trial court concluded was made with the requisite knowledge of falsity. We disagree. The evidence is sufficient to show a probability of establishing the known falsity of multiple statements, and the trial court did not rule otherwise.

the form of an August 10 receipt from Lyngso Garden Materials, Inc. attached to Judge's opposition indicating that two tons of flagstone had been ordered as a "Replacement for Pick Up on 7/31/12." But this evidence says nothing about having to sue Judge to recover any expense.

Lastly, although not mentioned by the trial court, Randell points out that in regard to the alleged falsity of the statement, "We had to sue him to get the lien removed," papers attached to Judge's opposition showed that Randell had filed a complaint with the district attorney regarding the parties' dispute. But a trier of fact could reasonably conclude that this statement in the review was also false: filing a consumer complaint about Judge with the district attorney is not "su[ing] him."

### 3. Actual Malice

Actual malice may be shown by evidence that Randell knew the statements were false or entertained serious doubts about their veracity. (See *Wilbanks*, *supra*, 121 Cal.App.4th at p. 906.) Because the alleged defamatory statements are matters of public interest, Randell contends, Judge would ultimately have to make this showing by "clear and convincing proof." (*Ibid.*; see *Brown, supra*, 48 Cal.3d at p. 747 [when speech involves a matter of public concern, a private figure must prove malice].)

Judge demonstrated a probability of establishing actual malice. If the trier of fact concluded that Judge was not drunk on the job, it could just as well conclude that Randell *knew* he was not drunk, based on her personal observations. While Randell urges this inference is improper because she is blind, her argument is unavailing: Randell's ability to discern Judge's lack of sobriety is a matter for the trier of fact; besides, if Randell was indeed unable to determine whether Judge was drunk, the fact that she nonetheless represented he was drunk could suggest she made the statement without any basis for believing it to be true.

Similarly, if the trier of fact concluded that Randell did not have to sue Judge to get the money back for replacing the flagstone, the jury might reasonably conclude that Randell knew this statement was false, especially in light of her representation to the

16

district attorney that it was replaced at no charge to her. And the jury could also conclude that, when Randell said she had to sue Judge to get the lien removed, she knew the distinction between suing Judge and filing a consumer complaint with the district attorney. In light of this evidence—as well as Randell's vitriol toward Judge in her emails—there was sufficient evidence to conclude that Judge had a probability of establishing that the false statements in the reviews were made with actual malice.

The trial court did not err in concluding that Judge established a probability of prevailing on his cause of action for defamation. Accordingly, Randell fails to establish that the court erred in denying her anti-SLAPP motion to strike.[5]

### D. Judge's Cross-Appeal

Judge's "Respondent's Brief/Cross Appellant's Opening Brief" does not distinguish the arguments he makes in response to Randell's appeal from the arguments he makes in favor of his cross-appeal. And Randell's reply brief is of no help.

In our estimation, besides the arguments we have already addressed *ante*, Judge makes two contentions. First, he contends the trial court erred in sustaining Randell's demurrer to his breach of contract cause of action; he also asserts, however, that he filed an amended complaint, the court denied Randell's demurrer and motion to strike, and Randell answered the complaint. Although these documents are not in the record, his representations indicate that any challenge to the court's order sustaining the original demurrer is moot. Second, Judge contends the court erred by denying his repeated requests for discovery. In light of our affirmance of the trial court's denial of the motion to strike, however, this contention is moot as well.

### III. DISPOSITION

The order is affirmed.

---

[5] By this ruling, we do not decide whether Judge will be able to prove his allegations at trial; we decide only that there was sufficient evidence for the trial court to conclude that Judge showed a probability of prevailing for purposes of the anti-SLAPP statute.

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
SIMONS, J.