Filed 10/29/25  Alexander v. City of Santa Cruz CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL T. ALEXANDER, Plaintiff and Appellant, v. CITY OF SANTA CRUZ et al., Defendants and Respondents. | H051774 (Santa Cruz County Super. Ct. No. 23CV01364) |

Michael T. Alexander, representing himself as appellant, sued the City of Santa Cruz (City) and several members of the City's police department for disability discrimination and other civil rights claims.  Alexander's claims arise from an incident in which Alexander alleges the police confronted and threatened to arrest him as he waited in his wheelchair to file a complaint at the City's main post office.  The defendants brought an anti-SLAPP motion[1] to strike the complaint, in its entirety, under Code of Civil Procedure[2] section

---

[1] An anti-SLAPP motion is "a special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773–774.)

[2] All further unspecified statutory references are to the Code of Civil Procedure.

425.16. The trial court granted the anti-SLAPP motion after concluding that each of Alexander's claims arose from protected speech, and Alexander had not met his burden to establish a possibility of prevailing on those claims. We affirm the order granting the special motion to strike.

## I. FACTS AND PROCEDURAL BACKGROUND

We draw the following facts from the pleadings and supporting declarations submitted in the trial court. We accept as true Alexander's factual assertions for the purpose of resolving whether the court erred in granting the anti-SLAPP motion and consider only whether any contrary evidence from defendants establishes their entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*); *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 754 (*Laker*).)

Alexander is a disabled person under California law and has been classified as disabled by the Social Security Administration since 1992. Alexander's disabilities affect his neurological and musculoskeletal functions. He requires the use of a wheelchair for mobility, and his physical impairments significantly limit his major life activities, including caring for himself, performing manual tasks, walking, and working.

On May 10, 2022, Alexander, using his wheelchair, visited the Santa Cruz Main Post Office on Front Street. He asked a postal service employee for information about filing an Americans with Disabilities Act (ADA) complaint.[3] Alexander told the postal service employees that he needed them

---

[3] Alexander asserts that, as a disabled person protected under the ADA and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), he is aware of his right to file an ADA complaint and the procedures for doing so pursuant to 39 Code of Federal Regulations part 255.6. That provision

to print out the form for filing the complaint because he did not have online access. The employees told him to wait while they assisted other customers. Alexander learned a short time later that they had called the police.

Santa Cruz Police Officer Alberto Fletes (erroneously named in the complaint as "Arturo" Fletes) arrived at the post office. Alexander explained that he was waiting for assistance to file an ADA complaint. Officer Fletes, who was in uniform wearing "battlefield combat attire" and had a visible firearm, caused Alexander to feel physically intimidated and fear for his safety. Officer Fletes told Alexander that the post office supervisor had asked that Alexander leave, and Alexander was trespassing. Alexander responded that the post office employees were committing a hate crime by filing a false police report and using the police to carry out their discriminatory action by " 'running [him] off,' " and that Officer Fletes's conduct was aiding the employees in racially profiling and discriminating against a disabled person trying to file a complaint. Officer Fletes repeated his threat to arrest Alexander for trespassing and ignored Alexander's request to make a police report of the hate crime taking place. Fearing for his physical and psychological safety in light of Officer Fletes's threatened action to arrest him, Alexander left the post office.

Following the incident, Alexander filed a complaint with the independent police auditor of the Santa Cruz Police Department and the Santa Cruz Sheriff's Office. The complaint was routed to Santa Cruz Police Sergeant Erich Hoppe and reported to Chief of Police Bernie Escalante. Alexander received a response via e-mail from Sergeant Hoppe stating that

applies the procedures set forth therein "to section 504 complaints alleging disability discrimination in any program or activity of the Postal Service and brought by members of the public." (39 C.F.R. § 255.6(b).)

3

he and Chief Escalante had reviewed the report and body camera footage and concluded Officer Fletes had done nothing wrong. Sergeant Hoppe and Chief Escalante did not respond to Alexander's objection and demand for an investigation consistent with department policy.

The incident resulted in Alexander experiencing and being diagnosed with severe emotional distress, PTSD, panic attacks, anxiety, depression, and physical ailments from which Alexander did not previously suffer. Alexander unsuccessfully sought to obtain copies of the body camera footage via public records request, but the footage was ruled exempt from disclosure and the matter dismissed.

In June 2023, Alexander filed the instant civil action against the City, Officer Fletes, Chief Escalante, Sergeant Hoppe, and unnamed "Doe" defendants (together, defendants). The complaint alleged that Alexander did not "raise his voice, become belligerent, or exhibit any disturbing or disruptive conduct that would be deemed [] a disturbance or that would interfere or otherwise affect the due course of business of the USPS facility," yet Officer Fletes "abused and discriminated against [him] as a disabled and dependent adult," causing Alexander to sustain injuries. It alleged that "[a]s a direct result of the threats, intimidation, and coercion i.e., what Officer Fletes said, his physical stance, the battlefield combat attire, what Officer Fletes was wearing, and the 'personal-visible-threat-appearance [] [Officer Fletes] presented . . . caused [Alexander] to retreat for his physical, mental[] [and] emotional[] safety, over [his] objections, and against his free will in reasonable fear . . . while in a wheelchair."

Alexander's complaint asserted 12 "claims for relief" (which we refer to as causes of action), alleging (1) violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1; (Bane Act)) by threat, intimidation, and coercion; (2)

4

violation of the Bane Act by assault; (3) violation of the Bane Act through civil conspiracy; (4) violation of the Ralph Civil Rights Act (Civ. Code, § 51.7; (Ralph Act)) by threats of violence, harassment, intimidation, and coercion; (5) and (6) violation of the Unruh Civil Rights Act (Civ. Code, §§ 51, 54, 54.1; (Unruh Act)) for discrimination based on disability; (7) violation of the Bane Act through a reckless disregard for Alexander's rights; (8) violation of the Bane Act through the intentional infliction of emotional distress; (9) violation of Government Code section 815.6 for failure to perform a mandatory duty; (10) civil penalties under the Bane, Ralph, and Unruh Acts; (11) violation of the right to free speech under article I, section 2 of the California Constitution; and (12) violation of the right to due process under article I, section 7 of the California Constitution.[4]

Defendants responded to Alexander's complaint with an anti-SLAPP motion to strike the complaint. They argued that all 12 causes of action arose from activity protected under section 425.16, and Alexander could not show a prima facie probability of prevailing. Defendants submitted the declaration of Officer Fletes in support of the anti-SLAPP motion, which explained the officer's encounter with Alexander at the post office.[5]

---

[4] The complaint asserted the first and second causes of action under the Bane Act against Officer Fletes and the remaining causes of action (3 through 12) against all defendants.

[5] Officer Fletes stated that he was dispatched to the post office in response to a call for service due to a male subject who refused to leave and caused a disturbance after post office staff were unable to provide him with his mail. The male subject, Alexander, told Officer Fletes he was waiting on a complaint form. Post office staff explained that complaints could be made online or by mailed letter, and Officer Fletes suggested Alexander visit the public library to access the form online. Alexander responded that he had vision issues and asked if Officer Fletes was there in his official capacity, to

5

Alexander filed a written opposition to the anti-SLAPP motion and submitted a verified declaration that largely repeated the allegations in his complaint. Alexander declared that as he waited for the post office staff to print the complaint form, Officer Fletes "arrived and aggressively confronted [him] without cause" and "threatened to arrest [him] multiple times if [he] did not leave the post office, despite [Alexander] explaining [he] was waiting for assistance with an ADA complaint form." Alexander maintained that "Officer Fletes' threats felt physically intimidating and caused [Alexander] fear for [his] safety. [Alexander] felt coerced to leave the post office against [his] will, abandoning [his] legal right to file an ADA complaint. [Officer Fletes's] actions interfered with [Alexander's] federal and state rights."

Defendants filed a reply brief asserting that Alexander's opposition failed to address their arguments and included fabricated legal authority.

The trial court issued a written order granting defendants' anti-SLAPP motion and ordering all claims for relief be stricken and the complaint

---

which Officer Fletes responded affirmatively. Alexander asserted that the post office had violated the law (" 'PC 422.6' ") and was using the officer's presence to threaten and intimidate him. Alexander was uncooperative when Officer Fletes asked him to elaborate on the alleged crime, and Officer Fletes explained that the postal supervisor had asked Alexander to leave, as the staff was unable to assist him. Alexander denied the supervisor had asked him to leave. Officer Fletes told Alexander that he was asking him to leave the property on behalf of the supervisor and would issue a citation for trespassing if Alexander refused. Alexander left the building after obtaining Officer Fletes's business card, name, and report number.

At no point during the encounter did Officer Fletes arrest Alexander, issue a citation, use any physical force, or obtain any identifying information for Alexander. Officer Fletes learned Alexander's identity at a later date, when Alexander contacted the police department. Alexander told Officer Fletes during a phone call that he wanted to file a complaint against him, and Officer Fletes informed him to contact the department and request to file a complaint.

6

dismissed with prejudice. The court found the defendants met their initial burden of showing Alexander's claims arose from protected activity based on case law that statements made in connection with a criminal investigation or police reports are protected under section 425.16, subdivision (e)(2). The court analyzed the allegations and evidence submitted in Alexander's opposition with respect to the Bane Act, Ralph Act, Unruh Act, and other claims. It concluded that oral threats of arrest were insufficient to state a claim under the Bane Act and Ralph Act, the police department is not considered a " 'business establishment' " for purposes of Unruh Act claims, there was no allegation of a mandatory duty as required for Government Code section 815.6, and Alexander had not alleged facts to support his constitutional claims. The court also found Alexander's noncompliance with the Government Claims Act (see Gov. Code, § 945.4) to be an additional basis precluding him from obtaining relief on the merits of his statutory claims.

Alexander filed a timely notice of appeal of the trial court's order.

## II. DISCUSSION

Alexander challenges the trial court's grant of the anti-SLAPP motion striking his complaint. He contends the ruling fundamentally misapplied the anti-SLAPP statute and failed to recognize federally protected disability rights. Defendants counter that the court correctly determined the asserted claims arise from statements made by Officer Fletes during the course of a criminal investigation and that Alexander is unable make a sufficient, prima facie showing of entitlement to relief.

*A. Principles of Appellate Review and Scope of Review*

A fundamental principle of appellate review is that we presume a trial court's judgment is correct and the burden is on the appellant to demonstrate that the court committed an error that justifies reversal of the judgment.

7

(*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 (*L.O.*); *Hernandez v. First Student, Inc.* (2019) 37 CalApp.5th 270, 277 (*Hernandez*); see *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) The appellant must support each claim of error with meaningful analysis and citation to legal authority. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 (*Ewald*).) An appellant's failure to raise a point (or to support it with reasoned argument and citations to authority) allows the reviewing court to deem the unsupported contentions forfeited. (*Ibid.*; *L.O.*, at p. 620; see also *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) Furthermore, " '[w]e will not ordinarily consider issues raised for the first time in a reply brief.' " (*Hernandez*, at p. 277.)

Alexander, although self-represented, must follow these rules. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

Beginning with the scope of the appeal, defendants correctly point out that Alexander has challenged the anti-SLAPP decision only as it pertains to the conduct of Officer Fletes. He does not appear to challenge those aspects of the trial court's decision on the anti-SLAPP motion pertaining to the statements or conduct of the other defendants (Chief Escalante and Sergeant Hoppe) following Alexander's request for investigation. Nor has Alexander challenged the court's alternative finding in defendants' favor at the second step of the analysis based on Alexander's noncompliance with the Government Claims Act prior to filing the complaint.

We limit our discussion to the issues raised by Alexander's appellate briefing, reviewing only the claims related to the conduct of Officer Fletes. We do not address (and deem forfeited on appeal) those additional arguments before the trial court, and not raised on appeal, with respect to all other

8

defendants. (*L.O.*, *supra*, 96 Cal.App.5th at p. 620; *Hernandez*, *supra*, 37 Cal.App.5th at p. 277.) Furthermore, we deem forfeited any claim of error related to the court's finding that Alexander has not shown a likelihood of prevailing on the merits due to his failure to comply with the Government Claims Act, as Alexander does not address that issue in his appellate briefing. (See Gov. Code, § 945.4.)

As to the arguments made by Alexander, substantial portions of the opening brief on appeal do not comply with the rules of appellate briefing. It is the appellant's duty to support the contentions on appeal with argument and citation to authority that demonstrates prejudicial error warranting reversal. (*Hernandez*, *supra*, 37 Cal.App.5th at pp. 276–277; see Cal. Rules of Court, rule 8.204(a)(1), (2).)

While we decline to deem Alexander's contentions forfeited on appeal, the deficiencies in his briefing have rendered our review more burdensome. In particular, Alexander's assertions in support of his prima facie showing pertaining to the second step of the analysis consist largely of legal conclusions or legal maxims and lack legal analysis or citation to factual support in the record.

Turning to the merits of the appeal, we address the principal contentions raised on appeal but disregard conclusory arguments that fail to supply relevant support based on legal authority and legal analysis.

*B. The Anti-SLAPP Statute*

Section 425.16, commonly known as the anti-SLAPP statute, affords defendants the opportunity to bring a special motion to strike a cause of action arising from constitutionally protected speech or petitioning activity. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 320 (*Barry*); *Laker*, *supra*, 32 Cal.App.5th at p. 759.) "If a claim arises out of an 'act . . . in

9

furtherance of [a] person's right of petition or free speech . . . in connection with a public issue,' the claim must be stricken unless the nonmoving party establishes 'a probability that [it] will prevail on the claim.'  ([]§ 425.16, subd. (b)(1).)"  (*Guracar v. Student Loan Solutions, LLC* (2025) 111 Cal.App.5th 330, 341 (*Guracar*).)

The trial court evaluates a section 425.16 motion to strike in two steps.  First, the court examines the nature of the conduct that underlies the plaintiff's allegations to determine whether it is protected by section 425.16; next, the court assesses the merits of the plaintiff's claim.  (*Barry*, *supra*, 2 Cal.5th at p. 321; *Laker*, *supra*, 32 Cal.App.5th at p. 760.)

In the first step, the trial court determines whether the moving defendant has shown the speech or act underlying the plaintiff's claim falls within one or more of the four categories of protected acts set out in section 425.16, subdivision (e) (hereafter, section 425.16(e)).  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).)  The categories protect any written or oral statement made (1) "before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," (2) "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," (3) "in a place open to the public or a public forum in connection with an issue of public interest," or (4) "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16(e).)

If the movant prevails at the first step, the burden shifts to the nonmoving party to demonstrate a probability of prevailing on the merits of the challenged claim or claims.  (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7

10

Cal.5th at p. 884.) "To establish a probability of prevailing, a nonmoving party must demonstrate that the claim is 'legally sufficient and factually substantiated'—that is, the claim has ' "minimal merit" ' and the factual showing supporting it, if accepted, 'would be sufficient to sustain a favorable judgment.' " (*Guracar*, *supra*, 111 Cal.App.5th at p. 341; see *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).) A trial court at this step "considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based' . . . ([] § 425.16, subd. (b)(2))." (*Barry*, *supra*, 2 Cal.5th at p. 321.) "The court ' " 'accept[s] as true the evidence favorable to the plaintiff [citation] and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Ibid.*)

"Through this 'summary-judgment-like procedure,' the statute authorizes the quick dismissal of meritless claims, thereby ensuring that SLAPP suits are ended ' " 'early and without great cost to the SLAPP target.' " ' " (*Barry*, *supra*, 2 Cal.5th at p. 324.)

*C. Standard of Review*

"We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1067.) We consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence " ' " 'only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Barry*, *supra*, 2 Cal.5th at p. 321.)

11

*D. Analysis*

Alexander contends that Officer Fletes's actions fall outside the definition of protected activity, and the trial court erred in finding that defendants met their initial burden under the first step of the anti-SLAPP statute. He contends the court further erred in deciding that he could not demonstrate a probability of prevailing on the merits of his claims.

 1. First Step: Protected Acts

In their anti-SLAPP motion, defendants argued that all the asserted claims were based on oral or written statements of Officer Fletes made during his criminal investigation at the post office and constituted protected speech under section 425.16(e)(2), (e)(3), and (e)(4). On appeal, Alexander does not dispute that his claims arise from the statements of Officer Fletes but argues those statements are not protected acts.

The complaint identifies the offending conduct of Officer Fletes in terms of "harassment" and threats to arrest Alexander while presenting an intimidating or threatening appearance. The threats are variously described (and set out in detail in the trial court's order granting the anti-SLAPP motion) as Officer Fletes " 'stopped' [Alexander] without probable cause and harassed and coerced [him]"; Alexander "was threatened, intimidated, and coerced, by Officer Fletes to abandon this right to file a disability complaint"; Alexander "felt that there would be use of physical force by Officer Fletes against [him]"; and "[a]s a direct result of the threats, intimidation, and coercion i.e., what Officer Fletes said, his physical stance, the battlefield combat attire, what Officer Fletes was wearing, and the 'personal-visible-threat appearance['] he [Officer Fletes] presented to" Alexander that caused Alexander "to retreat for his physical, mental[] [and] emotional[] safety"; Officer Fletes " 'stopped and confronted' " Alexander and "was rambling

12

sentences that [Alexander] did not understand"; Officer Fletes told Alexander he "was '*trespassing*'" and had "'*to leave*'"; when Alexander objected, he "was then threatened by Officer Fletes with physical force in the form of an arrest if [Alexander] did not leave a public business" and "again stated that [Alexander] was 'trespassing.'"

Alexander contends these actions do not come within anti-SLAPP protection because Officer Fletes's "threats of arrest . . . were neither made in connection with any governmental proceedings nor in a public forum addressing matters of public interest" but instead "represented direct interference with" the exercise of Alexander's federally protected rights. He argues the trial court focused narrowly on Officer Fletes's "statements in isolation" without considering the full context in which those statements arose—namely, Officer Fletes's interference with Alexander's attempt to file a disability complaint.

Exercising our independent review, we decide that Alexander's characterization of Officer Fletes's conduct as interfering with his federally protected rights does not remove that conduct from the categories of protected speech.

It is well settled that governmental entities and officials are entitled to invoke the protections of the motion to strike procedure when they are sued based on statements made or activities engaged in while in their official capacity. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17–18.) As our high court has explained, "the purpose of the anti-SLAPP statute plainly supports an interpretation that protects statements by governmental entities or public officials as well as statements by private individuals." (*Id.* at p. 18.) This purpose is promoted by the directive that the statute "'be construed broadly'" in furtherance of its stated goal that abuse of the judicial process

13

not be used to chill participation in matters of public significance. (*Ibid.*, quoting § 425.16, subd. (a), italics omitted; see also *Barry*, *supra*, 2 Cal.5th at p. 321.)

The allegations based on Officer Fletes's engagement with Alexander at the post office consist of oral statements made by the officer. Section 425.16(e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . executive, . . . or any other official proceeding authorized by law." (*Ibid.*) Broadly construed under section 425.16, Officer Fletes's conduct comes within this category of protected acts. His statements to Alexander were made in the course of his duties responding to a call for police assistance due to an alleged trespass or public disturbance after the employees were unable to assist Alexander.

Courts have held in similar contexts that statements by law enforcement related to an official investigation are protected under the anti-SLAPP statute. (*Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1003 (*Schaffer*).) These protections apply to communications among law enforcement personnel (*ibid.*) and do not depend on the filing of charges. (*Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544 (*Hansen*) [holding that statements made by California Department of Corrections and Rehabilitation personnel during an internal investigation, which the plaintiff claimed constituted false reports, were "made in connection with an issue under consideration by an authorized official proceeding and thus constitute[d] protected activity under subdivision (e)(2)."]; see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [observing that communications preparatory to or in anticipation of bringing an official proceeding are within the protection of section 425.16].)

14

In *Schaffer*, the plaintiff sued the city and two police officers (an investigator and a sergeant), asserting civil rights violations and tort claims based on the officers' role in orchestrating charges, which were later dropped, against the plaintiff. (*Schaffer*, *supra*, 168 Cal.App.4th at p. 996.) The plaintiff's claims were based on a memorandum to the district attorney prepared by the inspector, who implied the plaintiff should be prosecuted, and two affidavits signed by the sergeant, asserting the plaintiff committed crimes and supporting the district attorney's filing of a complaint. (*Id.* at pp. 996, 999.) The trial court granted the defendants' anti-SLAPP motion, and the *Schaffer* court affirmed. (*Id.* at pp. 1005–1006.) The appellate court held, with respect to the first step of the analysis, that the officers' memorandum and sworn affidavits were written statements made in connection with an issue under consideration by an executive (the district attorney) or by an official proceeding authorized by law, and on that basis were entitled to protection under the anti-SLAPP statute. (*Schaffer*, at pp. 999, 1003–1004.)

The *Schaffer* court rejected the plaintiff's contention that construing section 425.16(e)(2) to include the police officers' statements would discourage citizens from filing legitimate lawsuits for police misconduct. It explained, "the anti-SLAPP statute does not immunize police officers from misconduct; it merely attempts to insulate them from having to litigate plainly *unmeritorious* lawsuits, the possibility of which would otherwise chill their ability to make statements in connection with official proceedings, as their duties to the public require. If, in fact, there *is* merit to the plaintiff's cause of action, the plaintiff can avoid dismissal simply by establishing a probability of prevailing." (*Schaffer*, *supra*, 168 Cal.App.4th at p. 1004.)

15

Alexander asserts the statements of Officer Fletes are not protected by the anti-SLAPP statute but offers scant supporting legal authority. He does not, for example, attempt to distinguish Officer Fletes's statements, made in response to a call for assistance and investigation into alleged trespass, from the protected statements of law enforcement personnel made in connection with the investigations in *Schaffer* or *Hansen*.

Alexander argues, citing *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, that courts caution against applying section 425.16 to discrimination complaints, as "doing so would 'significantly burden plaintiffs in contravention of the statute's purpose to curb abusive SLAPP suits.'" However, the cited case does not support the stated proposition nor contain the language quoted in Alexander's brief. Instead, in affirming the denial of the defendant's anti-SLAPP motion, the court in *Alta Loma* observed that a complaint based not on the protected act of filing legal papers to initiate the removal of rental units from the market but on the landlord's discriminatory failure to accommodate a tenant's disability is not a SLAPP. (*Id.* at p. 1287.) The court reasoned that "if this kind of suit could be considered a SLAPP, then landlords and owners . . . could discriminate during the removal process with impunity knowing any subsequent suit for disability discrimination would be subject to a motion to strike." (*Id.* at p. 1288.) Thus, *Alta Loma* highlights the distinction between protected acts that precede or trigger the cause of action and the conduct giving rise to the cause of action itself. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

Alexander maintains that the causes of action in the complaint do not arise from protected speech in connection with an official proceeding but from what he asserts is Officer Fletes's unprotected conduct of threatening arrest

16

and impeding Alexander's right to file an ADA complaint. However, Alexander's characterization of Officer Fletes's conduct is not determinative. "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

Each of Alexander's discrimination and intimidation/interference related claims is based on either Officer Fletes's statements made in connection with his response to the post office's report of Alexander's alleged, disruptive conduct and/or his investigation of a possible trespass after Alexander did not leave the premises.[6] The affidavits of Alexander and Officer Fletes are consistent on this point. Both describe Officer Fletes

---

[6] As summarized *ante*, the complaint causes of action variously identify, among other allegations, Officer Fletes's alleged "use of threats, intimidation and/or coercion," that he "threatened [Alexander] with arrest causing him to reasonably believe[] that he was about to be touched in a harmful or offensive manner," that he "committed acts of disability discrimination . . . by threatening with a form of arrest under coercive conditions," that Officer Fletes "conduct[ed] a flawed and inadequate investigation into [Alexander]'s claims of a hate crime by prematurely and incorrectly concluding any inquiry as required by law" as the basis for the claims under the Bane Act, Ralph Act, and Unruh Act.

To the extent that Alexander's claims for failure to perform a mandatory duty under Government Code section 815.6 and due process are based more particularly on the actions of defendants after Alexander sought an investigation into his treatment by Officer Fletes, the trial court found the conduct underlying those claims were also protected speech activity (i.e., e-mails and phone conversation generated in connection with the internal investigation into Alexander's demands) and that it constituted protected activity under section 425.16(e). We do not revisit that ruling in the absence of an assertion of error by Alexander on appeal. (*Hernandez*, *supra*, 37 CalApp.5th at p. 277.) We similarly do not revisit the court's ruling on the claims Alexander asserted against the other defendants. (See *ante*, pt. II.A.)

17

warning Alexander that he could be cited for trespassing (arrested, according to Alexander) for refusing to leave after post office employees requested he depart because they could not assist him.

We reject Alexander's assertion that the trial court's analysis at the first step was necessarily deficient for failing to consider the "[t]otality of the circumstances." That articulation is not the legally relevant test. Rather, the applicable inquiry is as to "each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action — to determine whether the acts are protected." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).) "If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

Here, the act or set of acts giving rise to Alexander's claims and pertinent to his arguments on appeal are the statements and conduct of Officer Fletes at the post office. While Alexandar argues that Officer Fletes's oral threats of arrest and statements at the post office do *not* qualify as protected activity because the officer's conduct unlawfully interfered with Alexander's right to file an ADA complaint, Alexander does not offer any authority that would preclude defendants from invoking anti-SLAPP protection here. For example, Alexander does not attempt to show (nor does the evidence support the argument) that the assertedly protected speech was illegal as a matter of law. (See, e.g., *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).)

Under these circumstances, the allegation that Officer Fletes's oral threats of arrest and statements to Alexander constituted unlawful interference with Alexander's right to file an ADA complaint does not remove

18

those statements from the ambit of section 425.16(e)(2). Rather, whether Alexander has shown that Fletes violated his rights is properly considered at the second step of the anti-SLAPP analysis. (*Schaffer*, *supra*, 168 Cal.App.4th at p. 1004; *Flatley*, *supra*, 39 Cal.4th at p. 320.)

We conclude, based on our review of the pleadings and supporting and opposing affidavits, that the claims at issue each arise from Officer Fletes's protected speech in the context of his official law enforcement actions at the post office. (*Navellier*, *supra*, 29 Cal.4th at p. 89.)[7]

2. Second Step: Prima Facie Case

At the second step of the analysis, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Baral*, *supra*, 1 Cal.5th at p. 396.) "For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does

___

[7] Having decided that defendants met their initial burden to establish that the claims at issue arise from Officer Fletes's oral statements made in connection with an issue under consideration by an executive body or other official proceeding within the meaning of section 425.16(e)(2), we need not address Alexander's additional argument that the "public interest" element of section 425.16, subdivision (e)(3) and (e)(4) has not been met. Defendants asserted the applicability of these latter provisions in the motion to strike pertaining to Alexander's allegations based on the subsequent conduct of defendants following Alexander's request for investigation and public records request. Since Alexander has not challenged the trial court's ruling with respect to anything but the conduct of Officer Fletes at the post office as the basis for the statute's application, we do not reach the additional, asserted grounds for anti-SLAPP protection.

not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

### a. Bane Act (Civ. Code, § 52.1)

Beginning with the Bane Act claims asserted in causes of action Nos. 1, 2, 3, 7, 8, and 10, Alexander argues that he has met the "minimal merit" requirement by demonstrating interference with his constitutional or statutory rights through threats, intimidation, or coercion.

The Bane Act authorizes a private right of action for damages and injunctive relief against a person, "whether or not acting under color of law," who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1, subd. (b); *Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841.) The California Supreme Court has explained that while "Civil Code section 52.1 was adopted 'to stem a tide of hate crimes' " (*Venegas*, at p. 843), the statute is not "limited to such crimes" (*ibid*.) and does not require a plaintiff to show the alleged threat or intimidation had a discriminatory purpose, or that the defendant "committed an actual hate crime." (*Ibid*.) Even so, "the statute was intended to address only egregious interferences with constitutional rights, not just any tort. The act of interference with a constitutional right must itself be deliberate or spiteful." (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 (*Shoyoye*).) Speech alone is insufficient to establish a Bane Act violation unless "the speech itself threatens violence."

(Civ. Code, § 52.1, subd. (k)[8]; *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 395 (*Julian*).)

Crediting, as we must, Alexander's evidence submitted in opposition to the anti-SLAPP motion (*Soukup, supra,* 39 Cal.4th at p. 291), we accept as true the information provided in his amended declaration, including that Officer Fletes threatened to arrest him if he did not leave the post office, the officer was in uniform wearing "battlefield combat attire" with a visible sidearm that caused Alexander to feel physically intimidated and fearful, the officer ignored Alexander's request to make a police report of the hate crime purportedly taking place, and Alexander left the post office because he feared for his physical and psychological safety in light of Officer Fletes's threat to arrest him.

These facts are legally insufficient to sustain a favorable judgment under the Bane Act. The statute is unambiguous in requiring that threat, intimidation, or coercion based on speech specifically includes the threat of violence against a specific person or group. (Civ. Code, § 52.1, subd. (k).) Because a violation of the statute based on speech requires "a showing that the speech itself threatens violence against a specific person or group of persons" (*ibid.*), a police officer's verbal threat to arrest an individual, without threat of *violence* against that person or their property, is insufficient

---

[8] Civil Code section 52.1, subdivision (k) states, "Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."

to sustain a claim under the Bane Act. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 66 (*Allen*).)

This point is well settled in contexts involving law enforcement action, where "[c]oercion inherent in the alleged constitutional violation, i.e., an overdetention in jail, is insufficient to meet the statutory requirement of ' "threat, intimidation, or coercion." ' " (*Doe v. State of California* (2017) 8 Cal.App.5th 832, 842, disapproved of on another ground by *Leon v. County of Riverside* (2023) 14 Cal.5th 910, 930.) Thus, in *Doe*, the appellate court upheld application of the anti-SLAPP statute to strike a Bane Act claim based on state agents' alleged use of threats of arrest and criminal prosecution to compel the plaintiff to register as a sex offender despite his conviction having been overturned. (*Doe*, at p. 842.) The court explained that the plaintiff did not show a probability of prevailing on the merits for purposes of the step two anti-SLAPP analysis, because "assuming agents of the State [Department of Justice] threatened to arrest/prosecute [the plaintiff] if he failed to register as a sex offender, the [plaintiffs] did not allege those agents engaged in independently threatening (or intimidating, coercive) conduct apart from the threats to arrest/prosecute him." (*Doe*, at p. 843.)

Similarly, in *Shoyoye*, the appellate court interpreted the numerous references to violence or threats of violence in Civil Code section 52.1 as "serv[ing] to establish the unmistakable tenor of the conduct" the statute "is meant to address." (*Shoyoye, supra*, 203 Cal.App.4th at p. 959.) The court held that the plaintiff's wrongful detention or overdetention in county jail due to negligence or error on the part of the defendant did not violate the Bane Act, absent a showing of purposeful intent to threaten or intimidate. (*Ibid.*) While the prolonged detention in jail "was traumatic and frightening" to the

plaintiff (*id.* at p. 961), "there was no evidence of any coercion independent of that inherent in a wrongful detention itself." (*Id.* at pp. 961–962; accord, *Allen, supra,* 234 Cal.App.4th at p. 69.)

*Julian* involved a similar determination by the Court of Appeal, where the plaintiff, a school employee, asserted violations of the Bane Act based on her involuntary detention by school police officers and admission to a hospital for mental health evaluation. (*Julian, supra,* 11 Cal.App.5th at p. 368.) The court affirmed the trial court's grant of summary judgment on the alleged Bane Act violation. It explained that "other than the actions necessary to detain" the plaintiff, her allegations of police scare tactics and " ' "forcible" and "coercive" interference with [her] constitutional rights' " were " 'inadequate to state a cause of action for a violation of [Civil Code] section 52.1.' " (*Id.* at p. 395.)

Alexander contends, citing *Venegas,* that his Bane Act claim "demonstrates a clear probability of success based on established precedent." However, the California Supreme Court's decision in *Venegas* addressed a different issue under the statute (pertaining to the hate crime origins of the Bane Act) and does not assist Alexander's argument that the evidence of Officer Fletes's allegedly intimidating appearance and oral threats to arrest him for trespass demonstrate the requisite minimal merit to sustain a favorable judgment. (*Baral, supra,* 1 Cal.5th at p. 396.) We conclude the trial court did not err in striking Alexander's causes of action under the Bane Act.

b. Ralph Act (Civ. Code, § 51.7)

Alexander contends he has satisfied his burden to show a probability of prevailing on his Ralph Act claim, asserted in causes of action Nos. 4 and 10. He asserts the Ralph Act claim is supported by "[p]rotection against violence

23

or intimidation by threat of violence based on protected characteristics, includ[ing] disability" and cites Officer Fletes's threats of arrest while Alexander "exercised disability-related rights to file a [United States Code] [s]ection 504 complaint" as his supporting evidence.

The Ralph Act is a civil rights statute which states, "All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of [s]ection 51,[9] or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive." (Civ. Code, § 51.7, subd. (b)(1).)

As with the Bane Act, a violation of the Ralph Act based on "[s]peech alone" requires a showing that the offending speech "itself threatens violence against a specific person or group of persons." (Civ. Code, § 51.7, subd. (e)(1)(A).) The plaintiff must show "all of" the enumerated elements (*id*., subd. (e)(1)) including not only that the speech threatens violence, but that the person threatening violence "is acting in reckless disregard for the threatening nature of their speech," (*id*., subd. (e)(1)(C)) "has the apparent ability to carry out the threat," (*id*., subd. (e)(1)(D)) and that the person or

---

[9] Civil Code section 51, subdivisions (b) and (e) list and define certain protected categories of persons for purposes of receiving equal accommodations, privileges, or services in business establishments. These categories include a person's "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." (*Id*., subd. (b).)

24

group against whom the threat is directed "reasonably fears that, because of the speech, violence will be committed against them or their property" (*id.,* subd. (e)(1)(B)).

Based on our independent review of the record and arguments, and crediting Alexander's allegations and evidence in opposition to the anti-SLAPP motion (*Soukup, supra,* 39 Cal.4th at p. 291), Alexander has not shown the minimal merit to his Ralph Act claim required to meet his burden at the second step of the anti-SLAPP analysis.

Alexander has submitted evidence of disability in his declaration to support a showing that he meets one or more categories of a protected person under the Ralph Act. (Civ. Code, §§ 51.7, subd. (b)(1), 51, subd. (b).) However, he has not met his burden to establish a Ralph Act violation based on his interaction with Officer Fletes at the post office, where there is no evidence that Officer Fletes's intimidating appearance or alleged threat to arrest Alexander for trespassing included the threat of violence and additional statutory elements. (Civ. Code, § 51.7, subd. (e)(1).) "There can be no 'threat of violence' without some expression of intent to injure or damage plaintiffs or their property, and there simply was none." (*Ramirez v. Wong* (2010) 188 Cal.App.4th 1480, 1486 [affirming order of dismissal where plaintiffs alleged Ralph Act violation, among other civil rights statutes, based on apartment manager who entered female tenants' unoccupied apartment, opened their dresser drawer, and sniffed their underwear].)

Nor has Alexander offered any legal authority or argument to support his claim that Officer Fletes's presence and statements directing Alexander to leave the premises or be cited for trespass, establishes even a minimal showing of probability of prevailing on the merits. We conclude the trial court did not err in granting the anti-SLAPP motion on the Ralph Act claims.

c. Unruh Act (Civ. Code, § 51)

Alexander contends he has shown a probability of prevailing on his Unruh Act claims, alleged in causes of action Nos. 5, 6, and 10, based on Officer Fletes's alleged interference with Alexander's filing of his federal disability complaint. Alexander argues that the California Supreme Court's decision in *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662 (*Brennon B.*) confirms that law enforcement agencies can be liable when acting as business establishments, and that the police were acting outside their legitimate authority in this situation.

The Unruh Act, codified at Civil Code section 51, prohibits business establishments from discriminating against persons based on their "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." (Civ. Code, § 51, subd. (b).) It "was 'enacted to prohibit discriminatory conduct by individual proprietors and private entities offering goods and services to the general public.' " (*Thurston v. Omni Hotels Management Corporation* (2021) 69 Cal.App.5th 299, 305.)

The Unruh Act "does not cover 'discriminations other than those made by a "business establishment" in the course of furnishing goods, services or facilities to its clients, patrons or customers' " and "is 'confined to discriminations against recipients of the "business establishment's . . . goods, services or facilities." ' " (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 149.) It "creates a cause of action for any person who is denied the right to 'full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever' based on" that person's membership in a protected

class.  (*Mackey v. Board of Trustees of California State University* (2019) 31 Cal.App.5th 640, 660; Civ. Code, § 52.)

Contrary to Alexander's assertion, a police department is not a public establishment for purposes of the Unruh Act.  (See *Burnett v. San Francisco Police Department* (1995) 36 Cal. App. 4th 1177, 1191–1192 [holding that the Unruh Act bars discrimination by *business establishments* but does not preclude nonbusinesses (such as the city's police code) from enacting policies that distinguish based on a protected characteristic such as age].)

*Brennon B*. does not establish otherwise.  There, our high court emphasized that the purpose and legislative history of the Unruh Act "make clear that the focus of the Act is the conduct of *private business establishments*." (*Brennon B., supra*, 13 Cal.5th at p. 675.)  It rejected the application of the Unruh Act to a public school district, noting that "[w]hile the phrase 'all business establishments of every kind whatsoever' must be interpreted as broadly as reasonably possible, its scope remains limited to entities acting as private business establishments." (*Brennon B.*, at p. 678.) The court contrasted the Unruh Act with statutes that expressly include state and local government among the covered entities (such as the California Fair Employment and Housing Act) and concluded that the Unruh Act is not directed at government entities but "is focused on the actions of private actors." (*Brennon B.*, at p. 678.)  The court further rejected the argument that a nonbusiness establishment like a public school district could still be sued for discrimination under subdivision (f) of Civil Code section 51 based on an alleged ADA violation.[10]  (*Brennon B.*, at p. 685.)

---

[10] Civil Code section 51, subdivision (f) states, "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

Alexander offers no argument or authority that would support a different interpretation of the Unruh Act as applied to police officers acting in the scope of their public duties.  He asserts that Officer Fletes was not acting in the scope of his police duties, since "interfering with or preventing the filing of a federal civil rights complaint is not a legitimate police function." (Capitalization omitted.)  However, even taking as true the facts asserted in opposition to the anti-SLAPP motion, it is undisputed that Officer Fletes's statements to Alexander (directing him to leave the premises based on the request of the post office staff, under threat of citation for trespassing) were made in the scope of his duties during his response to a dispatch call due to Alexander 's continued presence at the post office.  Cases "indicate that to be a 'business establishment' under the [Unruh] Act an entity must effectively operate as a business or a commercial enterprise or 'engage[] in behavior involving sufficient "businesslike attributes." ' " (*Brennon B.*, *supra*, 13 Cal.5th at p. 681.)  There is no evidence to support Alexander's conclusory assertion that Officer Fletes or the other defendants acted in a way that would warrant treating the police department as a business establishment for purposes of the Unruh Act.

Because Alexander has not shown that the Unruh Act applies here, we conclude he has not met his burden to establish a likelihood of prevailing on the merits of his Unruh Act claims.  The trial court did not err in striking the fifth, sixth, and tenth causes of action on this ground.

d.  Mandatory Duty (Gov. Code, § 815.6)

Alexander cites Penal Code section 368, Government Code section 815.6, and his complaint allegations pertaining to the Santa Cruz Police Department policy manual in support of his mandatory duty claim alleged in

28

cause of action No. 9.  However, he offers no legal argument or explanation in support of his position.

The absence of any cogent argument supported by legal analysis, case authority, and citation to the record precludes meaningful consideration of Alexander's appeal as to this claim, which we deem forfeited.  (*L.O.*, *supra*, 96 Cal.App.5th at p. 620; *Hernandez*, *supra*, 37 Cal.App.5th at pp. 276–277.) Moreover, even considering the allegations of the ninth cause of action and accepting as true all evidence favoring Alexander's claims (*Barry*, *supra*, 2 Cal.5th at p. 321), the facts are insufficient to establish a likelihood of success on the merits.  Alexander alleges that defendants violated their mandatory duties when they failed to comply with the provisions of Penal Code section 368.6, which he asserts create "mandatory ministerial duties and not discretionary."  He further alleges that the policy manual mandates investigation and reporting of alleged " '[s]enior and [d]isability [v]ictimization' " even when the allegations appear unfounded.  However, he does not demonstrate that Penal Code section 368.6 imposes any mandatory duties, or that the asserted facts support a claimed violation of that section.

Government Code section 815.6 states, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  A government entity may be liable under the statute "when (1) a mandatory duty is imposed by an enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury."  (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348.)

Our Supreme Court has explained that the application of Government Code section 815.6 "requires that the enactment at issue be *obligatory,* rather than merely discretionary or permissive, in its directions to the public entity; it must *require,* rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.) Application of the statute also "requires the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' " (*Id*. at p. 499.) Whether an enactment creates a mandatory duty is a question of law subject to this court's independent review. (*Ibid*.)

Contrary to Alexander's allegations, Penal Code section 368.6 does not impose any mandatory duties. It provides in relevant part: "Each local law enforcement agency may adopt a policy regarding senior and disability victimization. A municipal police department . . . that adopts or revises a policy regarding elder and dependent adult abuse or senior and disability victimization on or after April 13, 2021, shall include, but not be limited to, . . . [¶] . . . (2) A statement of the agency's commitment to providing equal protection and demonstrating respect for all persons regardless of age or disabilities, and to conscientiously enforcing all criminal laws protecting elders, and adults and children with disabilities, regardless of whether these crimes also carry civil penalties." (*Id*., subd. (c)(2).)

By the plain terms of the statute, a police agency's adoption of a policy regarding disability victimization is discretionary or permissive, not obligatory. (See *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 ["It is a well-settled principle of statutory construction that the word

30

'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute."].)  Alexander has not offered any legal argument in support of an interpretation of Penal Code section 368.6 that would render the adoption of a disability victimization policy obligatory rather than discretionary, nor has he shown how the purported mandatory duty under that section protects against the kind of injury he allegedly suffered.  Furthermore, the paragraphs in Alexander's complaint allegedly quoting from the Santa Cruz Police Department's policy manual do not, without more (i.e., evidentiary support), establish a mandatory policy to give rise to a mandatory duty claim.

Consequently, Alexander has not established the existence of a mandatory duty under the standard articulated in *Haggis*.  We therefore conclude that Alexander has not demonstrated his mandatory duty claim is legally sufficient or factually substantiated, and the trial court did not err in striking the claim.

### e.  Constitutional Claims

We are unable to discern, in Alexander's opening brief on appeal, any arguments directly challenging the trial court's determination that Alexander was unable to meet his burden at the second step of the anti-SLAPP analysis with respect to his constitutional claims.  Alexander states only that he "had clear First Amendment right to petition government (file complaint against USPS)" and an "explicit statutory right to file [United States Code] [s]ection 504 disability complaint" and asserts that the officer's "conduct directly prevented exercise of these federal rights."  However, his complaint alleges,

31

in the eleventh and twelfth causes of action, violations of the California Constitution, not the federal constitution.[11]

The free speech provision of the California Constitution states in relevant part, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." (Cal. Const., art. I, § 2, subd. (a).) The due process provision states in part, "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws." (*Id.*, art. I, § 7, subd. (a).)

Alexander's conclusory references, in opposition to the anti-SLAPP motion and in his appellate briefing, to the First Amendment of the United States Constitution and to an action under federal law pursuant to Title 42 United States Code section 1983, do not satisfy his burden to establish a prima facie right to relief on his state constitutional claims. Nor do the facts in opposition to the anti-SLAPP motion support Alexander's claims to injunctive and declaratory relief for the alleged constitutional violations. As we explained in relation to Alexander's mandatory duty claim, we need not consider and may deem forfeited those points on appeal that are not supported by some cogent legal analysis. (*L.O.*, *supra*, 96 Cal.App.5th at p. 620; *Hernandez, supra,* 37 Cal.App.5th at pp. 276–277.)

---

[11] In the eleventh cause of action, Alexander alleges that defendants' actions violated his rights of speech under article 1, section 2, of the California Constitution. In the twelfth cause of action, he alleges defendants deprived him of liberty and due process of law, in violation of article I, section 7, of the California Constitution, by "failing to give [him] sufficient notice of the censorship of its publications and correspondence and an opportunity to be heard with respect to that censorship."

Because Alexander does not offer support on the merits for proving a violation of his state constitutional rights as alleged in the eleventh and twelfth causes of action, he cannot show a probability of prevailing on his free speech and due process causes of action. The trial court did not err in striking the eleventh and twelfth causes of action.

### f. Additional Arguments

Alexander makes a variety of additional arguments, set out under headings III through X and XIII of his opening brief. These arguments, which consist of topic headings followed generally by a case citation and list of asserted errors or policy statements, lack paragraph structure and contain no accompanying legal analysis or explanatory context. Alexander asserts that the trial court erred in striking the entire complaint rather than considering each cause of action separately, failed to properly consider his status as a disabled individual and the protections afforded him under relevant disability rights laws, erred in its interpretation and application of the "public interest" element of the anti-SLAPP statute, erred in applying qualified immunity principles, and infringed on his constitutional rights by applying anti-SLAPP too broadly. He also asserts that the court's ruling creates a chilling effect on the exercise of disability rights, contravenes public policy favoring disability rights, and undermines the integrity of the judicial process. Alexander raises new arguments in his reply brief, citing federal law and the supremacy clause of the United States Constitution as grounds for "void[ing]" what he characterizes as state interference with federal disability complaint procedures.

These arguments generally convey Alexander's belief that the trial court failed to consider the adverse effects of its ruling and incorrectly applied the law. However, the referenced sections of the opening brief do not

33

comply with the content rules for appellate briefing (Cal. Rules of Court, rule 8.204(a)) and fail to follow the fundamental rule of appellate procedure to support each claim of error with meaningful legal analysis. Furthermore, fairness requires that reviewing courts " 'will not ordinarily consider issues raised for the first time in a reply brief.' " (*Hernandez, supra*, 37 Cal.App.5th at p. 277.) Accordingly, Alexander has forfeited these arguments on appeal. (*Ibid.*; *Ewald, supra*, 13 Cal.App.5th at p. 948.)

Moreover, none of the arguments afford a basis for reversal of the trial court's ruling granting the anti-SLAPP motion. Alexander contends the trial court erred by striking the entire complaint and failed to perform a claim-by-claim analysis. Our review of the record confirms the opposite. Consistent with the process set forth by the California Supreme Court, the trial court considered the acts alleged by Alexander to comprise the basis of the claims against defendants, concluded each of the claims arose from protected underlying acts, and correctly determined that the resulting claims lacked the requisite degree of merit to survive the motion to strike. (See *Bonni, supra*, 11 Cal.5th at pp. 1009–1010.) Alexander's conclusory assertion that Officer Fletes's conduct was illegal and therefore not protected is not supported by the complaint allegations or evidence in opposition to the anti-SLAPP motion and, as explained *ante* (pt. II.C.1.), does not come under the narrow illegality exception described in *Flatley*.

Alexander also contends the trial court failed to properly consider his status as a disabled individual but fails to support this argument with any relevant case authority or relevant analytical framework. Conclusory statements that the trial court's approach "[u]ndermined established disability rights protections" and "[d]id not adequately address the remedial purpose of disability laws" are insufficient to establish error on appeal.

We have considered Alexander's remaining arguments and decide they reflect Alexander's disagreement with the trial court's evaluation of the allegations and evidence but do not offer any basis for reversal. He asserts that the court failed to discern between routine law enforcement and conduct that interferes with federally protected rights. However, neither the allegations nor evidence proffered in opposition to the anti-SLAPP motion support the claim that Officer Fletes prevented Alexander from filing an ADA complaint, which he was told by the post office employees had to be completed online.

Furthermore, Alexander's concern that overbroad application of the anti-SLAPP statute will create a chilling effect to dissuade disabled individuals from bringing legitimate civil rights complaints is misplaced. The second step of the anti-SLAPP analysis affords those who bring meritorious suits protection from dismissal by allowing plaintiffs to demonstrate the challenged claim has the requisite " ' "minimal merit" ' " (*Laker, supra,* 32 Cal.App.5th at p. 760) to proceed. That Alexander has been unable to meet this standard with respect to his claims does not indicate a general chilling of civil rights lawsuits challenging police action.

Nor does Alexander offer support for his contention that extra scrutiny—beyond that built into the two-step analytical framework for evaluating a special motion to strike—is needed to balance the purposes of the anti-SLAPP statute and civil rights laws. *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, which Alexander cites in support of his argument, does not contain the statement about heightened " 'judicial scrutiny' " quoted in Alexander's brief. Rather, it illustrates the application of the statutory framework to distinguish between claims arising from the exercise of protected acts and those arising from unprotected, discriminatory

conduct. (See *id*. at pp. 624–625 [affirming the denial of defendants' anti-SLAPP motion as to those causes of action arising not from protected speech but from acts of alleged racial discrimination].)

Having independently considered the arguments, complaint allegations, and evidence in support of Alexander's opposition to the anti-SLAPP motion, we conclude he has not shown error in the trial court's evaluation of the acts giving rise to his claims for relief, nor has he shown a possibility of prevailing on the merits of any of his 12 causes of action.

## III. DISPOSITION

The trial court's order granting the special motion to strike under Code of Civil Procedure section 425.16 is affirmed. Respondents are entitled to recover reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Danner, Acting P. J.

I CONCUR:

_____

Wilson, J.

**H051774**
***Alexander v. City of Santa Cruz***

Bromberg, J., Dissenting

The majority holds that the anti-SLAPP statute (Code Civ. Proc., § 425.16) protects statements made by a police officer in the course of responding to a disturbance. In the majority's view, because the officer's statements were made while performing official duties, they constitute statements "made in a connection with an issue under consideration" in an official proceeding and therefore protected activity under the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (b)(1).) Although this conclusion takes only a step beyond existing case law, in my view it is a step too far. I therefore respectfully dissent.

The Legislature did not enact the anti-SLAPP statute to protect the ability of law enforcement officers to perform their official duties. That ability is protected already by official immunity statutes, which, among other things, grant law enforcement officers absolute or qualified immunity against liability while enforcing the law and initiating prosecution. (See Gov. Code, § 820.4 [qualified immunity for enforcing the law]; *id.*, § 821.6 [absolute immunity for instituting judicial proceedings]; see also *id.* § 820.2 [absolute immunity for discretionary actions].) The anti-SLAPP statute serves a different purpose: "to encourage continued participation in matters of public significance" by a special motion to strike in "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (Code Civ. Proc., § 425.16, subd. (a); see *id.*, § 425.16, subd. (b)(1).) When police officers respond to calls for assistance, they presumably are trying to maintain the peace and perform routine law enforcement duties, not seeking to participate in matters of public significance or to exercise their rights to petition or to free speech. As a consequence, the stated purpose of the anti-SLAPP statute is not served by

treating statements made by police officers in performing their duties as protected activity under the statute.

It is true that the anti-SLAPP statute has been both drafted and construed broadly. The statute protects actions "in furtherance of [a] person's right of petition or free speech . . . in connection with a public issue." (Code Civ. Proc., § 425.16, subd. (b)(1).) And such protected activity—actions "in furtherance of [a] person's right of petition or free speech . . . in connection with a public issue"—is defined broadly to include, among other things, "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (*Id*., § 425.16, subd. (e)(2).) In addition, the statute expressly states that it is to "be construed broadly." (*Id*., § 425.16, subd. (a).)

Accordingly, as the majority points out, the Supreme Court has applied the anti-SLAPP statute to statements made in anticipation of litigation and other official proceedings (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115), and Court of Appeal decisions have applied the statute to statements made by law enforcement officers in considering whether to file criminal charges (*Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 998-999), conducting an internal investigation into possible criminal misconduct (*Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1544), and making public statements concerning a criminal investigation (*Bradbury v. Superior Court of Ventura County* (1996) 49 Cal.App.4th 1108, 1117).

However, in all of these prior cases, an official procedure was under way, or a prosecution was being contemplated, before the statements held to be protected activity under the anti-SLAPP statute were made. As a result,

2

those statements were naturally considered to be "made in connection with . . . an issue under consideration or review by . . . any . . . official proceeding." (Code Civ. Proc., § 425.16, subd. (e)(2).) That is not the case here. When Officer Fletes responded to the call for police assistance in this case, there was no prosecution or other official proceeding in progress or even in contemplation. It is therefore hard to see how the statements that Officer Fletes made in responding to the call were "made in connection with . . . an issue under consideration" in an official proceeding.

Nor, to my knowledge, has any prior case held that the anti-SLAPP statute protects a statement made in connection with an issue under consideration by an official proceeding not yet even contemplated. The City's counsel suggested that there was a possibility of future prosecution against Mr. Alexander, but counsel offered no reason why the anti-SLAPP statute should be interpreted to apply because of such a possibility. The majority likewise offers no reason, and I do not see any.

As a consequence, I would follow what appears to be the plain language of the anti-SLAPP statute and conclude that the statements made by Officer Fletes in responding to the call for assistance in this case are not protected speech or petitioning activity under the anti-SLAPP statute.

3

_____
BROMBERG, J.

*Alexander v. City of Santa Cruz*
H051774